## WHITE v. RANKIN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.

No. 259. Argued and submitted March 30, 1892. — Decided April 18, 1892.

A bill in equity for the infringement of letters patent for an invention was in the usual form, and did not mention or refer to any contract with the defendants for the use of the patent. There was a plea setting up an agreement in writing between the plaintiff and one of the defendants to assign to him an interest in the patent, on certain conditions, which it was alleged he had performed, and certain other matters which it was alleged had given the defendants a right to make, use and sell the patented invention. The plea being overruled the defendants set up the same defence by answer. To this there was a replication, and a stipulation in writing was entered into, admitting that the defendants had made and sold articles containing the patented inventions, and that a certain written agreement between the plaintiff and one of the defendants had been made, to the purport before mentioned, and certain proceedings had been had in pursuance thereof. Thereupon the Circuit Court entered a decree dismissing the bill "for want of jurisdiction;" Held,

   (1) The decree was erroneous, because the jurisdiction was clear on the face of the bill, and the Circuit Court did not decide the case on the facts contained in the stipulation, nor adjudicate on the legal effect of those facts, while it had jurisdiction to try the case;

   (2) The cases of *Wilson* v. *Sandford*, 10 How. 99; *Hartell* v. *Tilghman*, 99 U. S. 547, and others, explained;

   (3) The Circuit Court ought to have proceeded to hear the case on the merits and the proofs put in.

THE case is stated in the opinion.

Mr. M. A. Wheaton for appellant submitted on his brief.

Mr. Francis J. Lippitt for appellees. Mr. D. L. Smoot filed a brief for same.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit in equity, brought April 19, 1878, in the Circuit Court of the United States for the District of California,

by George W. White, a citizen of California, against Irâ P.
Rankin, A. P. Brayton, John Howell and James M. Thompson, citizens of California, for the infringement of letters patent No. 44,145, granted to George W. White and Austin G. Day, as assignees of George W. White, the inventor, September 6, 1864, for seventeen years from August 23, 1864, for an "improved apparatus for roasting and reducing ores;" and also for the infringement of letters patent No. 46,287, granted to George W. White, as inventor, February 7, 1865, for seventeen years from that day for an "improved apparatus for calcining ores." All of the interest of Day in patent No. 44,145 was conveyed by him to White before September 20, 1876.

The bill is in the usual form of bills in equity for the infringement of letters patent. It alleges that the defendants, since September 20, 1876, and before the filing of the bill, without the license of the plaintiff and without any right so to do, have manufactured, used and sold machines embracing the inventions covered by both of the patents and infringing the same. It contains no mention of, or reference to, any contract with the defendants for their use of either of the patents. The prayer of the bill is in the usual form, for a perpetual injunction, an account of profits, an assessment of damages and an increase of the latter to an amount not exceeding three times the sum at which they shall be assessed. It also prays for a discovery from the defendants as to the number of furnaces they have made since September 20, 1876, how the same were constructed, whether they have not on hand a large number, and how many, of such furnaces, and how the same are constructed.

The defendants demurred to the bill on the ground that it showed no case for a discovery or for relief, and that the discovery demanded was in aid of the enforcement of a penalty. The demurrer was sustained as to discovery, with leave to the plaintiff to amend. The bill was then amended by striking out the prayer for an increase of damages and by waiving all right to a penalty.

The defendants then put in a plea to the bill, setting up that the plaintiff, on February 13, 1875, agreed in writing to assign

to the defendant Thompson a one-fourth interest in the two patents in question, with a corresponding one-fourth interest in all patents that the plaintiff might thereafter obtain for improvements made by him on said inventions, and a corresponding interest in all reissues and extensions of said patents, in case Thompson should, within sixteen months thence ensuing, elect to take the said assignment; that within the sixteen months Thompson elected to take it, and in due time thereafter performed every act necessary to entitle himself to it, and duly demanded of the plaintiff the execution and delivery of the said assignment, to which Thompson became entitled as of June 13, 1876; that the plaintiff White failing to execute and deliver the same to Thompson on demand, the latter, on August 31, 1876, brought suit against White in the District Court of the 19th Judicial District of California, in and for the city and county of San Francisco, to compel a specific performance of the said contract and for other relief; that White appeared and defended the suit; that the issues raised by the pleadings were duly tried and determined by the said District Court, which, on November 22, 1877, made a decree containing the following findings of fact: (1) That the contract set up in the complaint of Thompson was made between the parties; (2) that Thompson made to White a loan of $1000, and delivered to White a note and agreement mentioned in the contract, and received from White his notes for $1000; (3) that Thompson elected to take the assignment of one-fourth of the patent rights mentioned in the contract, and made known to White his said election before and upon the expiration of the sixteen months; (4) that at the expiration of that time, Thompson, at San Francisco, with reasonable diligence sought White for the purpose of demanding from him an assignment of one-fourth of the said patent rights, and prepared to tender and deliver to White, in payment therefor, White's said notes and Thompson's assignment of the income of the said one-fourth, in accordance with the terms of the contract; (5) that White knew of Thompson's purpose and evaded him; (6) that, at the expiration of the sixteen months, Thompson, by writing addressed to and received by White,

demanded an assignment of one-fourth of the said patent rights, and offered to pay the consideration and perform the conditions imposed upon him by the contract; (7) that, on July 11, 1876, Thompson made to White a personal tender of White's said notes and an assignment of the income of said one-fourth, and demanded from White an assignment of the one-fourth; (8) that White made no objections to any of the said offers or tenders of performance; (9) that, between the first offers of performance and the commencement of that suit, on September 1, 1876, Thompson made efforts to settle the matter without litigation; (10) that Thompson, at the expiration of the sixteen months, was, and ever since had been and still was, willing and ready to perform the conditions on his part to entitle him to the assignment of the said one-fourth, and in due time made tender of performance; that, from such findings of fact, the court was of opinion, as a conclusion of law, that Thompson was entitled to an assignment of one-fourth of said patent rights as of June 13, 1876, and to an account; that thereupon it was decreed (1) that White execute and deliver to Thompson a proper deed transferring and assigning to him, as of June 13, 1876, a one-fourth interest in the two inventions secured by the said two patents, with a corresponding interest in all patents that White might have obtained since February 13, 1875, or might thereafter obtain, on improvements made by him on said inventions, and a corresponding interest in all reissues and extensions of said patents; (2) that Thompson, on the delivery of such deed, should surrender to White his said notes, and execute and deliver to him an assignment of the income of said one-fourth, to run for the period of two years from June 13, 1876, unless the sum of $4000 should be sooner realized; and (3) that if White should fail, for five days from the date of the decree, to obey it, then the clerk of the court, as special commissioner, should execute and deliver the deed to Thompson, and receive for White the notes and assignment of income; that it was referred to a commissioner to ascertain and report certain matters, and among them the profits lost and the damages sustained by Thompson since June 13, 1876, in consequence.

of White's failure to make the assignment; that, White having failed for more than five days after the entry of the decree to execute and deliver the assignment, the special commissioner, on January 31, 1878, received for White from Thompson the notes of White and the assignment of income mentioned in the decree, and executed and delivered to Thompson a deed transferring to the latter, as of June 13, 1876, a one-fourth interest in the two inventions secured by the said two patents, with a corresponding one-fourth interest in all patents that White might have obtained since February 13, 1875, or might thereafter obtain, on improvements theretofore or thereafter made by White on said inventions, and a corresponding interest in all reissues and extensions of the patents; that that deed was duly recorded in the Patent Office; that the other commissioner, before referred to, took depositions as to the account, and on October 25, 1880, returned them and his report to the Superior Court of the city and county of San Francisco, which by law had superseded the said District Court; that the cause came on for hearing upon White's motion for a final decree on the report, and, the judge who entered the decree of November 22, 1877, being no longer on the bench, the motion was heard and determined by a different judge, who, treating that decree as a nullity, entered an order, on February 4, 1881, against the objection of Thompson, setting aside and vacating all proceedings in the cause subsequent to the filing of the answer, restoring the cause to the calendar for trial, and charging Thompson with all the costs accrued up to the time of the order; that afterwards, on February 15, 1881, on the motion of White and against the objection of Thompson, the order of February 4, 1881, was amended so as to declare that the decree of November 22, 1877, and also the conveyance of January 31, 1878, and all proceedings in the action subsequent to the filing of the answer, were vacated and set aside, and the cause restored to the calendar for trial, and that Thompson should be charged with all the costs of the suit; that on April 5, 1881, Thompson appealed to the Supreme Court of California from the action of the Superior Court in its orders of February 4 and

15, 1881, and the appeal was undetermined and still pending; that at the time of the grievances mentioned in the bill in this suit Thompson was, and still is, the owner of and entitled to one-fourth of the inventions and patent rights mentioned in the bill, and to make, use and vend the furnaces; and that every furnace involving the said inventions, made, used and sold by the defendants, was made, used and sold under Thompson's said right and by virtue of his authority.

The plaintiff, in August, 1883, put in a replication to that plea. On April 1, 1884, the defendants filed a supplement to their plea, setting forth that on June 15, 1883, the Supreme Court of California sustained the appeal of Thompson, reversed the said orders of the Superior Court of February 4 and 15, 1881, and remanded the cause to that court for further proceedings not inconsistent with the opinion of said Supreme Court.

On August 11, 1884, the Circuit Court of the United States, on a hearing on the supplementary plea, overruled it, with leave to the defendants to file an amended plea. On August 25, 1884, they filed a plea setting up that Thompson, at the time of the grievances mentioned in the bill, was and still is the owner of and entitled to one-fourth of the inventions and patent rights mentioned in the bill, and entitled to make, use and vend the said furnaces; and that every furnace involving said inventions, made, used and sold by the defendants, was made, used and sold under Thompson's said right and by virtue of his authority. To the plea a replication was filed by the plaintiff in September, 1884. On the 29th of April, 1885, the Circuit Court entered an order overruling the plea and assigning the defendants to answer the bill.

On May 29, 1885, the defendants put in an answer to the bill, denying that the plaintiff, since September 20, 1876, had been and still was the exclusive owner of the two patents, denying that they had, without right, manufactured, used and sold furnaces covered by said patents, denying that they had infringed upon or violated any rights held by the plaintiff under the patents, and setting up that the defendant Thompson was and, ever since June 13, 1876, had been, the owner of

one-fourth of the inventions covered by the patents, and that every furnace manufactured, used and sold by the defendants, involving the said inventions, was manufactured, used and sold under the authority and license of Thompson as owner aforesaid of one-fourth of said inventions. A replication was filed to the answer in June, 1885.

On the 26th of February, 1886, a stipulation signed by the solicitors for the respective parties was filed, headed "Stipulation of submission and agreed facts," wherein it was admitted on behalf of the defendants, that after June 13, 1876, and before November 22, 1877, the defendants made and sold more than four furnaces involving devices and inventions described in and covered by the two patents in question, and that the said making and selling were done at the instance and by the direction of the defendant Thompson, "who asserts that he had authority so to do under the contract, decree and deed hereinafter mentioned." The stipulation then sets out the agreement of February 13, 1875, between White and Thompson, the complaint of Thompson against White filed August 31, 1876, in the suit in the state court, the answer of White to that complaint, the decree of November 22, 1877, the deed of January 31, 1878, the orders of February 4 and 15, 1881, made in the state court, the bill of exceptions for a second appeal to the Supreme Court of California, (which contains an order made by the Superior Court of the city and county of San Francisco, on August 26, 1884, ordering judgment in favor of Thompson against White and that White convey to Thompson a one-fourth interest in the patents and a corresponding one-fourth interest in all patents and patentable improvements on said inventions made by White prior to June 13, 1876, upon the delivery by Thompson to White of the notes mentioned in the complaint in the suit in the state court and the payment by Thompson to White of $4000,) the report of the commissioner in the suit of Thompson against White as to profits and damages, and copies of the two patents. By the stipulation it was admitted by the defendants that nothing had been paid by Thompson to White under the decree of August 26, 1884; and it was further agreed that

the cause should be brought on for hearing upon the pleadings therein and in accordance with the terms of the stipulation.

The cause having been heard by the Circuit Court of the United States for the Northern District of California, to which it had been transferred, that court entered a decree on October 10, 1887, that the bill be "dismissed for want of jurisdiction." From that decree the plaintiff appealed to this court. He having since died, his administrator has been substituted as appellant.

We are of opinion that the decree of the Circuit Court must be reversed. That decree was that the bill of complaint be dismissed for want of jurisdiction. The jurisdiction is clear on the face of the bill. The case stated by the bill arises on the patents. There is no suggestion in the bill that there was ever any contract or agreement, or attempt to make one, between the plaintiff and the defendant Thompson, or that either the plaintiff or the defendants claim anything under any contract. The averment in the bill that the defendants have made, used and sold machines containing the patented inventions without the license of the plaintiff and without any right so to do, cannot be regarded as raising any question on any alleged license or contract.

The Circuit Court did not decide the case upon the facts contained in the stipulation, nor did it adjudicate upon the legal effect of those facts. It did not hold that those facts were facts in the case and then dismiss the bill because the existence of those facts as facts removed the case from the cognizance of the court. It appears to have dismissed the bill on the simple ground that the defendants set up a contract of license from White. The bill being purely a bill for infringement, founded upon patents, what was set up by the defendants was set up as a defence and as showing the lawful right in them to do what they had done, and as a ground for the dismissal of the bill because they had not infringed the patents, although they had made and sold more than four furnaces involving the inventions covered by the patents. The decree was not one upon the facts of the case, but was

simply a decree that the court had no jurisdiction to try the case. The subject matter of the action, as set forth in the bill, gave the court jurisdiction, and exclusive jurisdiction, to try it. All of the parties to the suit were citizens of California, and if jurisdiction did not exist under the patent laws it did not exist at all.

Reliance is placed by the defendants upon the cases of *Wilson* v. *Sandford*, 10 How. 99; *Hartell* v. *Tilghman*, 99 U. S. 547; and *Albright* v. *Teas*, 106 U. S. 613.

In *Hartell* v. *Tilghman*, *supra*, the head-note of the report is that "a suit between citizens of the same State cannot be sustained in the Circuit Court, as arising under the patent laws of the United States, when the defendant admits the validity and his use of the plaintiff's letters patent, and a subsisting contract is shown governing the rights of the parties in the use of the invention." But in the case now before the court, the Circuit Court did not find that there was a subsisting, valid contract governing the rights of the defendants in the use of the invention. The Circuit Court found nothing as to the existence or validity of the contract, decree or deed, mentioned in the stipulation. The stipulation provides that, at the hearing, the contract, complaint, answer, decree and deed, set forth in the stipulation, may be offered in evidence, subject to such objections as might be urged against the originals thereof. The stipulation further states that the defendants do not admit that anything is due to the plaintiff from Thompson, and that they do admit that nothing had been paid by Thompson to the plaintiff under the decree of the state court of August 26, 1884, and since the making thereof. All these matters and questions ought to have been adjudicated by the Circuit Court before it could find ground to determine whether or not it should dismiss the bill. Until it had so adjudicated those questions, the decision in the case of *Hartell* v. *Tilghman* could not apply.

In that case, a reference to the bill, in the records of this court, as filed in the Circuit Court November 2, 1874, shows that Tilghman, in addition to setting out his patent, stated that it had been his practice to put up such fixtures as were

required to work his patented invention at the premises of the parties desiring to obtain a license, and then to demonstrate its practicability and instruct the parties in its use, with the previous understanding, however, that if successful and satisfactory, the parties should then repay the expenses incurred by him, and execute a regular form of license contract adopted by him; that a copy of the form of license adopted by Tilghman at the time was annexed to his bill, and it is there found; that about midsummer, 1873, one of the defendants applied to his agent to obtain a license to use the patented invention; that the nature of the license and agreement issued by the plaintiff, the mode of accounting and of changing the license rate was explained to him, and he then agreed to execute a license and agreement accordingly; that, on the faith of that agreement, machinery was supplied and erected by Tilghman at the works of the defendants, and a demand was then made by Tilghman's agent for the repayment of the cost of the machinery and for the execution of the regular license and agreement; that, after much delay, the cost of the machinery was repaid to Tilghman, but the defendants, on April 25, 1874, positively refused to execute the license and agreement, being the same issued to others in the same business; that the defendants were then served with notice to desist from using the patent process; that several monthly payments of royalty had previously been received from the defendants on the faith of their promise to execute a regular license and agreement; that, since their refusal so to do, the defendants had continued to send monthly reports of work done and checks therefor to the agent of Tilghman, as if in payment under a license, but such checks were returned to them, as they had no authority to use said process; that the right had been reserved to Tilghman and his agents, in all licenses executed by him, to visit and inspect machines operating his said process; and that, on the 26th of June, 1874, his agents formally applied for and were refused admission at both factories of the defendants, the foreman in each case asserting the express directions of the defendant Hartell not to admit either of them. One of the interrogatories put in

the bill was whether a license was not tendered to the defendants to execute, and whether they had not refused to execute it. The rest of the matters in the bill were in the usual form of a bill for the infringement of a patent.

Thus, in that case, the plaintiff showed distinctly in his bill that he had made an agreement with the defendants, and under it had supplied them with machinery; that they had used such machinery and paid him royalty for its use, and had continued, after they refused to execute a regular license and agreement, to send reports of work done and checks in payment therefor, as if in payment under a license; and that they had violated a right claimed by the plaintiff and his agents to visit and inspect machines operating his process. Those allegations amounted substantially to saying that what the defendants had done they claimed to have done rightfully, under an agreement with the plaintiff. That is a very different case from the one stated in the bill in the present suit.

In the opinion in *Hartell* v. *Tilghman*, it is stated that the plaintiff in that suit set out in the bill what the court understood to be a contract with the defendants for the use by the latter of his invention; that he declared that the defendants had paid him a considerable sum for the machines necessary in the use of the invention, and also the royalty which he asked, for several months, for the use of the process secured by the patent; and that he alleged that afterwards the defendants refused to do certain other things which he charged to have been a part of the contract, and thereupon he forbade them further to use his patent process and then charged them as infringers. The Circuit Court had decided in favor of the plaintiff, and this court reversed the decree, with directions to dismiss the bill without prejudice. That was done by this court in view of the averments of the bill, and on a consideration of the evidence in the case, as to the verbal agreement made between the parties, and the transactions between them which took place under it.

The case of *Wilson* v. *Sandford*, 10 How. 99, is cited by the court in *Hartell* v. *Tilghman*. In that case, the bill was filed to set aside a contract which the plaintiff had made with the

defendants for the use of machines under a patent belonging to the plaintiff, and to restrain the use of them, as infringements, on the ground that the contract had been forfeited by the refusal of the defendants to comply with its conditions.

The case of *Albright* v. *Teas*, 106 U. S. 613, was the case of a bill, where the parties were citizens of the same State, brought in a court of that State for moneys alleged to be due under a contract whereby certain patents granted to the plaintiff were transferred to the defendant. The bill prayed for an accounting of the amounts due the plaintiff for royalties under the contract, and for a decree therefor. The case was removed into the Circuit Court of the United States, but that court held, on final hearing, that it had no jurisdiction, because the case did not arise under any law of the United States, and remanded the case to the state court. This court affirmed the decree, citing as authority *Wilson* v. *Sandford*, and *Hartell* v. *Tilghman*.

In *Dale Tile M'f'g Co.* v. *Hyatt*, 125 U. S. 46, the cases above referred to were reviewed, and it was stated that it had been decided in those cases that a bill in equity in the Circuit Court of the United States, by the owner of a patent, to enforce a contract for the use thereof, or to set aside such a contract because the defendant had not complied with its terms, was not a case arising under the patent laws; and it was said that the bill in *Hartell* v. *Tilghman* alleged that the defendants had broken a contract by which they had agreed to pay the plaintiff a certain royalty for the use of his invention and to take a license from him, and thereupon he forbade them to use it, and they disregarded the prohibition. The same view was taken of *Albright* v. *Teas*.

The case of *Marsh* v. *Nichols*, 140 U. S. 344, is to the same purport.

We are entirely satisfied that the Circuit Court ought not to have dismissed the bill in this case for want of jurisdiction, but ought to have proceeded to hear it upon the merits and the proofs put in; and the decree is

*Reversed, and the cause remanded to the Circuit Court with a direction to hear it upon the merits.*