YOUNG REVERSIBLE LOCK–NUT CO. v. YOUNG LOCK–NUT CO. et al.

(Circuit Court, D. New Jersey. January 22, 1896.)

1. FEDERAL JURISDICTION IN PATENT CASES—INFRINGEMENT SUITS—MATTERS OF CONTRACT.

Where the case made by the bill is based upon the patent exclusively, the court has jurisdiction, notwithstanding the fact that by the answer the defendant admits the validity of the patent, and its own use and sale of the patented articles, and sets up, by way of defense, an alleged power of attorney, and a contract made thereunder, purporting to give it the right to use the invention. White v. Rankin, 12 Sup. Ct. 768, 144 U. S. 628, followed.

**2. SALE AND ASSIGNMENT OF PATENT — FRAUD OF ATTORNEY IN FACT — BONA FIDE PURCHASER.**

An attorney in fact for the sale of a patent organized among his personal friends and associates a corporation with $300,000 of stock, of which only $2,500 were in fact subscribed, not letting his own name appear as an officer or stockholder. He thereupon contracted in the name of his principal, who was absent in Europe, to sell the patent to the corporation on terms which were entirely beyond his authority, and thereafter conveyed the patent to the corporation. His principal repudiated the transaction immediately on being informed of it. *Held*, that the sale was a fraud upon the principal, and that the corporation could not claim the patent as a bona fide purchaser.

**3. ORGANIZATION OF CORPORATIONS—FILING CERTIFICATE—NEW YORK STATUTES.**

It is not essential to the capacity of a New York manufacturing corporation to maintain a suit that a certificate of its organization should be filed in the county of its principal place of business, if such a certificate has been filed in the office of the secretary of state and in the clerk's office of the county where the office of the company is located.

**4. SAME—SUITS BY CORPORATIONS—PROOF OF PAYMENT OF CAPITAL STOCK.**

A manufacturing corporation organized under the laws of New York may maintain a suit without showing compliance with the New York statute in respect to subscription and payment of its capital stock; for a failure in this regard would not ipso facto, and in the absence of action by the state, work a dissolution of the corporation, or prevent it from recovering its property.

This is a suit by the Young Reversible Lock-Nut Company against the Young Lock-Nut Company and others, for infringement of letters patent No. 447,224, issued February 24, 1891, to Levi H. Young, for a device for locking nuts. A preliminary injunction was heretofore denied. 66 Fed. 563. The bill is based exclusively on the patent, as in ordinary infringement suits. The answer concedes the validity of the patent, and admits the use by defendant of the patented improvement, as charged in the complaint; and, by way of defense, it makes the following averments:

First. It alleges a power of attorney made by Levi H. Young to one Ira Abbott, from whom the defendant company claims its alleged rights, and further avers: "That said power of attorney was made irrevocable for the reason, and as the defendant is informed and believes, said power of attorney was coupled with an interest in said patent to the extent of one-twelfth part thereof, duly assigned by said Levi H. Young to said Ira Abbott."

Second. That, acting in pursuance of this power of attorney, the said Ira Abbott, on April 24, 1893, made an agreement in writing in the name of Levi H. Young to sell the said letters patent to the defendant company, and duly authorized it to manufacture and sell the patented article.

Third. That on or about the same date (April 24, 1893), the said letters patent were, by said Levi H. Young, acting through his said attorney, Ira Abbott, duly assigned, transferred, and set over to the defendant company.

Edwin H. Brown and Louis O. Van Doren, for complainant.
Alexander Thain, for defendant.

ACHESON, Circuit Judge. The ruling in White v. Rankin, 144 U. S. 628, 12 Sup. Ct. 768, is decisive against the objection made to the jurisdiction of the court. Here, as there, the case presented by the bill is based upon the patent exclusively, and upon the face of the bill the court has cognizance of the case. The answer here, as there, sets up an agreement in writing between the patentee and one of the defendants under which the defendants claim to have

the right to make, use, and sell the invention. The issue here does not differ materially from the issue in White v. Rankin, where the supreme court held that the circuit court erred in dismissing the bill for want of jurisdiction, and remanded the cause with directions to the court to hear the case upon the merits. Indeed, jurisdiction is clearer in this case than it was in the case cited, for the plaintiff's position is that the instrument set up by these defendants as their justification was null and void ab initio. A hearing upon the merits, of course, involves an inquiry into the validity of the agreement which is set up as a defense to the charge of infringement.

By letter of attorney, dated March 30, 1892, Levi H. Young, the grantee of United States letters patent No. 447,224, dated February 24, 1891, for a device for locking nuts, constituted Ira Abbott "irrevocably" his attorney to conduct negotiations for sale or other disposition of said patent, or for the formation of a company to manufacture and sell the patented articles, with power to transfer and deliver the patent for such consideration as he might deem advisable and think fit and proper in Young's interest, and to execute all necessary documents for the purposes specified, and to utilize and convey, if necessary, the franchises, concessions, and privileges which Young had at Newport News, Va., or elsewhere. The allegation in the answer that this power of attorney was made irrevocable, because it was coupled with an interest in the patent to the extent of one-twelfth part thereof, assigned by Young to Abbott, is not supported by any evidence. On the contrary, it is shown that Abbott never had any interest whatsoever in the patent. The power, then, undoubtedly was revocable (Hunt v. Rousmanier, 8 Wheat. 174; Blackstone v. Buttermore, 53 Pa. St. 266); but whether it was effectually revoked by Young before Abbott undertook to act under it need not be considered in the view I take of the case. By an instrument of writing dated March 31, 1892, signed by Young and Abbott, and executed before the delivery of the power of attorney, it was stipulated that Abbott should not dispose of the patent unless he secured to Young the sum of $50,000 by direct payment or by deposit in bank to his credit, half thereof, at least, "spot cash," and the balance in approved notes at three, six, nine, and twelve months, together with the one-quarter of the capital stock of the company to be formed. The power of attorney and the collateral paper were executed in anticipation of Young's going abroad for a short time on business connected with his European patents for the lock-nut invention. Young sailed for England on April 2, 1892, not expecting to be absent from the United States more than 60 days, but he was detained abroad until October, 1893. On April 19, 1892, Abbott wrote to Young,— then in London,—suggesting that $50,000 was an excessive cash payment, and that it might be well for Young to take "33⅓ per cent. of the stock and $10,000 spot cash, and $25,000 with 6 per cent. at the end of the year after the stock has had a 10 per cent. dividend." Upon the receipt of this letter, Young, on May 3, 1892, cabled Abbott

his assent to this suggestion. It is argued by the defendants that in the subsequent transaction on April 24, 1893, about to be mentioned, between the Young Lock-Nut Company and Abbott, the latter was acting in pursuance of Young's cablegram. This view, however, is quite inadmissible, for not only had Young withdrawn his assent, but, as respects the "$10,000 spot cash," Abbott's suggested plan was not carried out, as we shall see. By an agreement in writing dated and made on April 24, 1893, executed by Ira Abbott, professedly under the above-recited power of attorney, and in the name of Levi H. Young, and by the corporation defendant, the Young Lock-Nut Company, it was stipulated that Young should sell and convey to said company, and that the company should purchase his said letters patent and his franchises, concessions, and privileges at Newport News or elsewhere, for the sum of $135,000, to be paid as follows: $100,000 in the capital stock of the company at the par value of $100 a share, $10,000 in cash, and $25,000 by the note of the company, bearing interest, "to be paid at the end of one year after the stock of said company shall have earned and paid a net dividend of ten per cent. per annum"; said payments to be made "on or before one year from the date hereof," and upon the transfer to the company of said patent and properties; and that in the meantime, and until payment of said purchase money and the delivery of the patent and properties, the company should be authorized to manufacture and sell the patented nut locks, paying to Young by way of royalty a sum equal to such dividends as might be declared by the company upon $135,000 of its stock, such payments to be made at the time of the payment of such dividends. After learning of the above-recited agreement, Young, upon June 7, 1893, sent a cablegram and a letter to Ira Abbott, repudiating the agreement as unauthorized, and on the same date he gave notice by letter to the defendants Charles P. Treat, Job Abbott, Robert Hazlett, Otto Crouse, and Alexander Thain, who embraced in their number all the officers and all the corporators of the Young Lock-Nut Company, that he had not sanctioned the formation of that company, and warning them against the infringement of his rights as sole owner of said patent.

It is very plain from the proofs that in making the agreement of April 24, 1893, Ira Abbott acted without rightful authority, and in fraud of Young. Can the Young Lock-Nut Company be deemed a bona fide purchaser without notice? The certificate of the corporate organization of that company bears date April 8th, and was executed on April 17, 1893, and it was filed on the day of the date of said agreement. The certificate shows that the company was formed for the purpose of manufacturing and vending Young's patented lock nuts, and for the sale of rights under Young's patent. Beyond question, Ira Abbott was the projector and organizer of this company, although he discreetly kept his name out of the organization papers, except that he subscribed the certificate as an attesting witness, and made the affidavit annexed thereto of the due execution of that document. The certificate fixes the capital stock

of the company at $300,000, to be divided into shares each of the par value of $100, and it provides that the amount with which the company shall commence business shall be $2,500. That meager amount only of stock—25 shares—was subscribed for. Whether this stock subscription was ever paid does not appear. There were but four subscribers and corporators, namely, Job Abbott, brother of Ira Abbott; Robert Hazlett, a subordinate office associate of Job Abbott; Alexander Thain, a lawyer and the legal adviser of Ira Abbott; and one Otto Crouse, who, it seems, is a lawyer, residing in Jersey City. Job Abbott's office became the place of business of this company. From the start Ira Abbott was the manager of the company. This company, so brought forth and constituted, having neither means nor credit, undertook to purchase from Ira Abbott, as the agent of Levi H. Young, the latter's valuable patent and other property out and out, and to acquire an immediate vested right therein, without paying or securing to Young any part whatever of the named purchase price, $135,000. Can such a company, a mere paper concern, between whose membership and Ira Abbott such close relations existed, without having paid or secured aught to Young, be esteemed a bona fide purchaser, without notice of Abbott's lack of authority? To this hour the company has made no payment or tender to Young. It is most significant that not one of the defendants—among whom are the officers and all the corporators of the company—has been called to sustain the bona fides of this transaction. Under the circumstances, their absence from the witness stand amounts to confession that the purchase here set up is indefensible. True, most of the plaintiff's evidence was objected to, and it may be that as to some of it the objections were well taken, but there is enough of competent evidence in this record impeaching the good faith of the purchase by the Young Lock-Nut Company from Ira Abbott to make it incumbent upon the defendants to sustain that purchase by counter proofs, if it were possible to do so. But no such attempt was made, and a conclusion unfavorable to the defendants is irresistible. Upon the uncontradicted proofs the Young Lock-Nut Company must be regarded as a mere instrument, devised and used by Ira Abbott to further his unwarrantable scheme, and as lending itself thereto, and hence without any lawful title to or right in Young's patent.

Touching the objection raised to the capacity of the plaintiff company to sue, little need be said. The certificate of its corporate organization was offered without objection. The subsequent motion to strike it out seems to have been based upon the alleged failure to file the certificate in the office of the secretary of state of the state of New York. By leave of court, however, evidence of such filing has been supplied. The office of the company being in Queens county, the filing of the certificate in the clerk's office there was sufficient without also filing it in New York county, although its principal place of business may have been in the latter county. I do not think that the plaintiff was called on to show compliance

with the requirements of the statute of New York in respect to subscriptions to its capital stock and the payment thereof. Were the court to assume, without proof, failure in this regard, such failure would not ipso facto work a dissolution of the corporation, especially in the absence of complaint by the state of New York, or prevent the company's prosecuting an action to recover its property.

Finally, even were it true that Young was indebted to Ira Abbott for money loaned, or on account of transactions relating to the European patents, these matters afforded no justification for Abbott's action in regard to the patent in suit, and they constitute no sort of defense here.

Let a decree be drawn in favor of the plaintiff in accordance with the prayers of the bill.