**NATIONAL MARKING MACH. CO. v. TRIUMPH MFG. CO. et al.**

(Circuit Court of Appeals, Eighth Circuit. May 10, 1926.)

No. 7128.

1. Patents ⊗═▷317—Owner of patent, after decree against infringer as to right to manufacture, use, and sell machine, is entitled to injunction against infringer.

Owner of patent, after final decree against infringer as to right to manufacture, use, and sell infringing machine, is entitled to injunction to prevent infringer from making, using, or selling such machine.

2. **Specific performance** ⊙⟞71—**Owner of patent, having performed his part of contract and being willing to complete performance, is entitled to specific performance by manufacturer, who has failed to perform, unless remedy at law is adequate.**

Owner of patent, who has continually performed his part of contract, and is ready and willing to complete performance, is entitled to decree of specific performance thereof by manufacturer, who has failed or is failing to perform his part, unless remedy at law is adequate.

3. **Specific performance** ⊙⟞5—**Adequate remedy at law, precluding grant of specific performance, must be as certain, complete, and efficient as specific performance.**

Adequate remedy at law, which will preclude grant of specific performance of contract, must be as certain, prompt, complete, and efficient as decree of specific performance.

4. **Injunction** ⊙⟞59(1).

Court of equity has power and duty to grant injunction against continuance of breach of contract, which is negative decree of specific performance.

5. **Courts** ⊙⟞280.

Question whether suit arises under patent laws or diversity of citizenship is immaterial, where both are alleged.

6. **Patents** ⊙⟞317—**Former decree of infringement, subsequent contract giving owner right to sell patent device and infringer right to manufacture, and subsequent breach thereof by infringer held to warrant injunction restraining infringer from selling device.**

Former decree of infringement of patent device, subsequent contract giving owner of patent right to sell and infringer right to manufacture, and subsequent breach of contract by infringer held to warrant temporary injunction restraining infringer from selling device.

7. **Stipulations** ⊙⟞16—**Recital in stipulation for dissolution of injunction, stating contract entered into between owner of patent and infringer gave infringer right to sell machines, held not conclusive; contract itself giving infringer right to manufacture and owner sole right of sale being better evidence than stipulation.**

Where, after decree of infringement, owner of patent device entered into contract with infringer, whereby owner was to sell article and infringer manufacture it, a stipulation thereafter for dissolution of injunction, reciting that contract gave infringer right to sell machines, held not conclusive, since contract itself is better evidence than such subsequent recital.

8. **Estoppel** ⊙⟞5—**Stipulation between owner and infringer for dissolution of injunction, in consideration of contract of infringer to manufacture exclusively for owner, held not to estop owner, on breach of contract, from seeking injunction against sale of machines by infringer.**

Stipulation between owner of patent article and infringer for dissolution of injunction, where made in consideration of contract by infringer that it would manufacture and sell exclusively to owner, *held* not to estop owner, on breach of such contract, from seeking injunction to prevent sales by infringer.

9. **Patents** ⊙⟞218(3)—**Contract between owner and infringer, at time of decree of infringement, giving infringer right to manufacture and sell exclusively to owner for period of years, with provision for royalties on termination of contract, held to contemplate only termination by limitation of life, or other lawful termination thereof.**

Contract entered into between owner of patent and infringer, at time of decree of infringement, giving infringer right to manufacture and sell exclusively to owner for period of five years, with option of renewal, with provision for royalties to owner in case of termination of contract, *held* not to contemplate unlawful breach of contract by either of parties, but only termination by limitation of life of contract specified therein, or other lawful termination.

10. **Patents** ⊙⟞216—**Provision in contract between owner and infringer, after decree of infringement, giving infringer right to manufacture and sell exclusively to owner, with provision for royalties on other articles infringing such machine, held not to authorize manufacture and sale on royalty basis of machines mentioned in contract.**

Provision in contract between owner and infringer, giving infringer right to manufacture and sell exclusively to owner, with provision for royalties to owner on other patent articles infringing device, *held* not to authorize manufacture and sale on royalty basis of machines covered in contract, in view of express terms of contract prohibiting infringer from placing such machines on market, and of fact that infringement thereof had theretofore been determined before contract was made.

Appeal from the District Court of the United States for the Western District of Missouri; Merrill E. Otis, Judge.

Bill by the National Marking Machine Company against the Triumph Manufacturing Company and others. From an order denying an interlocutory judgment against defendants, plaintiff appeals. Reversed and remanded, with directions.

Ralph Orwig, of Des Moines, Iowa (Oscar Strauss, of Des Moines, Iowa, and Edmond H. McVey and Samuel R. Freet, both of Kansas City, Mo., on the brief), for appellant.

Henry S. Conrad, of Kansas City, Mo., (L. E. Durham and Hale Houts, both of Kansas City, Mo., on the brief), for appellees.

Before SANBORN and LEWIS, Circuit Judges, and PHILLIPS, District Judge.

SANBORN, Circuit Judge. This is an appeal of the National Marking Machine Company, the complainant, from an order

of the court below denying its motion for an interlocutory injunction against the defendant the Triumph Manufacturing Company and its officers, restraining them from selling the Bunker marking machines. The facts which condition the right in equity of the complainant to the injunction it seeks are set forth in its amended bill in equity, none of the averments of which were denied by answer, affidavit, or like showing on the part of the defendants.

On April 22, 1913, the United States issued to Chester W. Canine a pioneer patent on marking machines for laundries, the term of which expires in April, 1930. The plaintiff owned this patent, the defendants infringed it by the manufacture and sale of their Bunker marking machine. The plaintiff sued them for the infringement and obtained a final decree on October 9, 1919, whereby the court perpetually enjoined them and their officers and agents from making, using or selling to others their Bunker machine, or any of the devices described in certain claims of the patent to Canine, adjudged that the plaintiff was entitled to recover the profits they had made by the manufacture and sale of the Bunker marking machine, and the damages they had inflicted upon the plaintiff thereby, and referred the case to a master to state the account of the gains and profits and assess the damages.

On November 5, 1919, the plaintiff and defendant Triumph Manufacturing Company made a written contract to the effect that the defendant granted to the plaintiff the exclusive right to sell the Bunker machines on terms and at prices described in the contract, whereby each of the parties would receive about $125 for each machine, to the effect that the plaintiff would promptly commence, carry on, promote, and bring about during the life of the contract sales of these Bunker machines, that the defendant would in good faith manufacture promptly and expeditiously these machines and fill orders of the plaintiff for them f. o. b. cars Kansas City, Mo. This contract provided that its life should be five years from its date, November 5, 1919, and that, should it be terminated by limitation or otherwise, then the right and option was by the contract given to the plaintiff of continuing its life for an additional five years, provided that notice to that effect should be filed with the defendant six months prior to the expiration of the agreement. Such a notice was duly filed and the life of the contract continued until November 5, 1929.

The contract also provided that, upon termination of the contract by limitation or otherwise, the defendants should pay the plaintiff a royalty of 10 per cent. of the sale price of all the machines thereafter manufactured and sold by it, and that, should the contract be terminated prior to the date of its termination by limitation as therein fixed due to the fault of the first party, the defendants should be entitled to $5,000. Another provision of the contract was that, in the event that any marking machine hereafter, and during the life of this contract, manufactured and placed upon the market by the defendant, shall infringe any letters patent now owned by the plaintiff, then, upon such determination, the defendant shall pay to the plaintiff a royalty thereon equal to 10 per cent. of the sale price of any and all marking machines so manufactured and sold.

A few days after the contract was made, the parties signed a stipulation wherein they recited that they had entered into this contract by which all questions of profits and damages had been settled, and by which the defendant was given the right to manufacture its marking machines in the future, and whereby they stipulated that "it is therefore hereby mutually agreed that the injunction heretofore ordered in this case may be dissolved, and that the accounting before a master, as in said decree provided, shall be waived."

The parties to this agreement complied with its terms for more than five years, until some time in December, 1924, when and since the defendant has refused to fill the orders of the plaintiff for the Bunker machines, has notified prospective buyers that if they want Bunker machines they must order them from the defendant, and has sold such machines to such purchasers direct. For more than five years, commencing immediately after this contract was made, the plaintiff has conducted an expensive advertising campaign, informing laundry men of the merits and advantages of the Bunker machines, has employed a large number of salesmen and sent them throughout the United States, and has thereby created and built up a valuable good will in its exclusive business of selling the Bunker machines, their parts and supplies. It has during that time sold such machines, supplies, and repairs therefor under the contract, worth about $250,000, and has paid to the defendants therefor about $150,000. The defendant, by its refusal to comply with the terms of the contract, has already greatly injured the good will of the plaintiff's business, and, unless it is enjoined from continuing so to do, will destroy it, and

inflict upon the plaintiff irreparable injury and damages incapable of proof or measurement, and its course in selling these machines is an infringement upon the plaintiff's exclusive right to sell all laundry marking machines secured to it by the patent to Canine.

There are some principles, rules, and practices in equity established beyond debate or the necessity for the citation of authority, and among them are these:

[1] First. The owner of a patent, who has secured in a litigated case a final decree against an infringer that he has the exclusive, separable rights (a) to manufacture, (b) to use, and (c) to sell the infringing machine, and the devices and inventions embodied therein and in like machines, is entitled to an injunction to prevent the infringer from making, using, or selling the infringing machine, or any of those rights.

[2] Second. A party to a contract, who has continually performed his part thereof, and is ready and willing to complete his performance, is entitled to a decree of specific performance thereof by his contractee, who has failed or is failing to perform his part thereof, unless the contractor has an adequate remedy at law for the contractee's breach. Joy v. St. Louis, 138 U. S. 1, 46, 11 S. Ct. 243, 34 L. Ed. 843; Leavitt v. Windsor Land & Investment Co., 54 F. 439, 442, 443, 4 C. C. A. 425; General Electric Co. v. Westinghouse Electric Co. (C. C.) 151 F. 664, 674, 679, 681; White v. Rankin, 144 U. S. 628, 635, 636, 12 S. Ct. 768, 36 L. Ed. 569; Hartell v. Tilghman, 99 U. S. 547, 549, 556, 25 L. Ed. 357.

[3] Third. The adequate remedy at law, which will preclude the grant of specific performance of a contract by a court of equity, must be as certain, prompt, complete, and efficient to attain the ends of justice as a decree of specific performance. Boyce's Ex'rs v. Grundy, 3 Pet. 210, 215, 7 L. Ed. 655; Williams v. Neely, 134 F. 1, 67 C. C. A. 171, 69 L. R. A. 232; Castle Creek Water Co. v. City of Aspen, 146 F. 8, 14, 76 C. C. A. 516, 8 Ann. Cas. 660. The facts of this case leave no doubt that the plaintiff has no such remedy at law.

[4] Fourth. An injunction against the breach or the continuance of a breach of a contract is a negative decree of specific performance, and the power and duty of a court of equity to grant such an injunction is even greater, under the rules, principles, and practices in equity, than its power and duty to grant decrees of specific performance. A court of equity may issue its injunction to prevent a violation, or the continuance of a violation, of a contract in cases in which it would not decree specific performance thereof. Chicago & A. Ry. Co. v. New York, L. E. & W. R. Co. (C. C.) 24 F. 516, 522; Lumley v. Wagner, 1 De G., M. & G. 604; Singer Sewing Machine Co. v. Union Buttonhole & E. Co., Fed. Cas. No. 12,904, 1 Holmes, 253; Western Union Tel. Co. v. Union Pacific Ry. Co. (C. C.) 3 F. 423, 429; Texas Co. v. Central Fuel Oil Co., 194 F. 1, 3, 23, 114 C. C. A. 21.

[5] Counsel devote much time and attention to the questions whether this suit arises under the patent laws of the United States, or is based on diversity of citizenship, and whether or not the contract is a license from the patentee. These questions might be material, if the jurisdiction of the court below depended upon whether or not this case arises under the patent laws of the United States; but the plaintiff has not only set forth the suit for and the decree of infringement, the contract, and the stipulation, but it has also alleged the necessary diversity of citizenship of the parties to give the court plenary jurisdiction. These questions do not therefore seem to us material and we dismiss them here.

[6] In our opinion, the final decree of infringement, damages, and injunction, the contract of November 5, 1919, the performance of that contract by the plaintiff, and the breach and continuing violation of it by the defendant, condition the power and the duty of the courts to grant the temporary injunction here sought. By the final decree, the exclusive right of the plaintiff (a) to manufacture, (b) to use, and (c) to sell the defendant's Bunker marking machines and all other like machines was adjudged in the plaintiff, and the defendant was perpetually enjoined from infringing it. The plaintiff is now seeking an injunction against the infringement of its right to sell the Bunker machine. That right was vested in it when it made the contract of November 5, 1919, and was also expressly confirmed to it by the defendant by the express terms of that contract.

[7] Counsel for the defendant contend that the plaintiff lost this right by the stipulation for the dissolution of the injunction granted by the final decree, and by the recital in that stipulation that the contract, which had been made before the stipulation, gave to the defendant the right to sell the Bunker machines. The contract itself, however, is better evidence than the subsequent recital of a part of it in the stipulation, and that contract and the parties' construction of it, by

the manufacture by the defendant exclusively and by the sale by the plaintiff exclusively of the Bunker machines under it for more than five years, leave no doubt that the original exclusive right of the plaintiff to sell these machines remained in it when and ever since the contract was made.

[8] Another contention of counsel for the defendants is that the stipulation of the parties dissolving the original injunction estops the plaintiff from successfully seeking the preliminary injunction it now desires. But the stipulation recites and the facts of this case demonstrate that this stipulation was made in consideration of the prior making of the contract by the defendant that it would manufacture and sell exclusively to the plaintiff the Bunker machines, and that the plaintiff would exclusively sell those machines to other purchasers. If the defendant had performed, and was ready and willing to perform, that contract, the plaintiff might be estopped from obtaining the injunction it seeks; but the defendant has violated that contract, it has induced the plaintiff, in reliance upon its promise to perform it, to expend many thousands of dollars to advertise and sell this Bunker machine, and to build up a valuable good will, from which it would have profited if the defendant had kept its promise, and then it has refused to manufacture and deliver these machines to the plaintiff as it agreed. By its violation of its contract it has not only deprived and is depriving the plaintiff of its lawful business, good will, and profits under this contract, but is appropriating all these and the benefits of the plaintiff's advertising to itself. By these acts, by its continuing breach of its contract, it has estopped itself from taking any advantage thereof to prevent the plaintiff from obtaining the injunction it seeks to prevent the continuance of its violation of its agreement. The result is that the exclusive right of the plaintiff to sell the Bunker machines, which infringed the patent which the plaintiff owned, has been in the plaintiff from before the final decree was rendered, was expressly reserved to and confirmed in it by the terms of the contract of November 5, 1919, and seems to entitle it now to the temporary injunction it seeks. 32 Corpus Juris, 74.

Moreover, the contract of November 5, 1919, the plaintiff's performance thereof, and its readiness and willingness to continue to perform, the defendant's breach and continuing violation thereof, the gross injustice of the defendant's course, the inadequacy of the plaintiff's remedy at law for this breach, and the appealing equities of its case seem to entitle it to the same relief.

Counsel for the defendant, however, argue that the provisions in the contract that, first, "upon termination of the contract by limitation or otherwise, second party [the defendant] shall pay first party [the plaintiff] a royalty of 10 per cent. of the sale price of each and all of said machines thereafter manufactured and sold by second party"; and, second, that "in the event any marking machine hereafter, and during the life of the contract manufactured and placed upon the market by second party, shall infringe any letters patent now owned by first party, then upon such determination, second party shall pay first party a royalty thereon equal to ten per cent. of the sale price of. any and all marking machines so manufactured and sold," destroy the right of the plaintiff to any relief by injunction or otherwise in this case, except to 10 per cent. of the purchase price of the machines sold by it after the defendant commenced to violate the provision of the contract that it would manufacture and the plaintiff should sell all the Bunker machines at the prices and on the terms specified therein.

[9] But this interpretation of the agreement flies in the teeth of the evident intention and purpose of the parties, of the express contract that for ten years, the life of the contract, the defendant should make and the plaintiff should sell the Bunker machines, and the construction of that contract evidenced by the making and sales of the machines thereunder for more than five years after the contract was made. In our opinion the parties never contemplated or provided in this first provision for an unlawful breach of the contract by either of the parties, but only for a termination by limitation of the life of the contract specified therein or other lawful termination, and the life of the contract still continues.

[10] Nor does the second provision quoted seem to us to govern or affect the manufacture or sale of the Bunker machines. In the first part of the contract, in the seventh paragraph thereof, the parties to it expressly agreed that all the Bunker machines should be made by the defendant and sold by the plaintiff at prices and terms there stated. This provision is in the tenth paragraph, where it provides that, "in the event any marking machines hereafter, and during the life of this contract manufactured and placed upon the market by second party, shall infringe any letters patent now owned by first party, then upon such determination," the

second party should pay the 10 per cent. royalty. This provision could not have been intended to govern or refer to the Bunker machines, because by the express terms of the seventh paragraph they could not be "placed upon the market by second party" without a breach of that paragraph, and because it was only "upon such determination" that they infringed that the royalty on the machines referred to in this tenth paragraph was to be paid, and the determination that the Bunker machines infringed had been determined by final decree before the contract was made.

The principles, rules, and practices of equity jurisprudence, to which reference has been made, and the indisputable facts of this case, invoke the jurisdiction and impose the duty upon this court to reverse the order denying the application for a temporary writ of injunction, and to remand this case within ten days after the entry of the order or decree of this court to the court below, with directions to grant the application for the injunction and take such further proceedings as may be consistent with the views expressed in this opinion. And it is so ordered.