## AMERICAN PASTRY PRODUCTS CORPORATION v. UNITED PRODUCTS CORPORATION et al.

### No. 3190.

District Court, D. Massachusetts.

April 1, 1930.

Jesse A. Holton, of Boston, Mass., for plaintiff.

Samuel Markell and Goulston & Storrs, all of Boston, Mass., for defendants.

MORTON, District Judge.

This is a petition for attachment for contempt for alleged violation of an injunction against infringement of the plaintiff's patent and trade-mark.

The undisputed facts are as follows: The plaintiff brought suit against the United Products Corporation—which I shall refer to as the defendant—and obtained by consent an injunction enjoining the defendant from infringing either the plaintiff's patent or its trade-mark. In connection with the consent decree, the defendant paid the plaintiff a substantial sum for prior damages and profits, and accepted a license from the plaintiff authorizing the defendant to use the patent and trade-mark on the terms and conditions therein stated. The "License Agreement" is an elaborate instrument covering eleven pages, besides three annexed pages of details, forms for returns, etc. The clause XI reads as follows: "XI. This *license* is granted expressly on the following terms and conditions, applicable to all *licensees* of the *licensor*, which terms and conditions the *licensee* hereby accepts and agrees to keep and perform," etc.; then follow three pages of "terms and conditions." Clause XII provides in substance that, in case the *licensee* violates or fails to observe and keep the terms, conditions, and covenants of the license agreement, the *licensor* may at its election, without precluding any other right or remedy to which it may be entitled thereunder, and in particular without precluding its right to damages, accounting, and injunction, terminate all further rights of the *licensee* by serving written notice to that effect, etc. There is an express provision that the licensee should not sell the patented and trade-marked article in the states of Iowa or Nebraska for a period of three years, nor in the state of New Jersey for a period of five years. The general provisions of the license agreement are similar to those often found in such contracts.

The petition for contempt charges that the principal defendant, and other defendants who are alleged to have been so connected with it as to be subject to the injunction, violated the injunction, not only by selling in the excepted territory, but by failing to observe various other provisions of the license, especially those relating to

price cutting, to not giving bonuses, to paying royalties, and to making sworn returns. All the acts relied on as violations of the injunction are alleged in the petition to be breaches of the license agreement. These breaches of condition gave the plaintiff the right to terminate the license. It elected not to do so, however, and maintains that the license is still in force. No forfeiture or termination has been declared by the plaintiff or is sought in these proceedings.

The case involves a rather important practical question of patent law, viz. whether breach of the conditions of a license under which use of a patent or trade-mark is permitted—*the license itself not being revoked*—makes the licensee an infringer, or whether the patentee's only remedy under such circumstances is an action upon the agreement. The difficulty and doubt about the law on this general subject are shown by the fact that the Supreme Court has overruled or modified two of its own decisions relating to it (Hartell v. Tilghman, 99 U. S. 547, 25 L. Ed. 357, and Henry v. Dick Company, 224 U. S. 1, 32 S. Ct. 364, 56 L. Ed. 645, Ann. Cas. 1913D, 880, overruled or modified Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U. S. 518, 37 S. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959, and Luckett v. Delpark, 270 U. S. 504 and 508, 46 S. Ct. 397, 70 L. Ed. 703), as well as an important decision of a Court of Appeals (Heaton-Peninsular Button-Fastening Company v. Eureka Company, 77 F.. 288, 35 L. R. A. 728 [C. C. A. 6th] overruled in U. S. v. General Electric Company, 272 U. S. at page 493, 47 S. Ct. 192, 71 L. Ed. 362); and in several of the decisions there have been dissents.

An agreement very similar to that before me was considered in Chadeloid Chemical Company v. Johnson, 203 F. 993 (C. C. A. 7th). In that case the plaintiff (the licensor) filed a bill for infringement by reason of the licensee's alleged violation of the terms and conditions of the license agreement. It was held that the suit could not be maintained. "If the license came into existence, and appellant concedes it did, it continues in existence until a forfeiture is effected. (Citing cases). The agreement gives appellant the right to enforce a forfeiture for breaches, but contains no provision that breaches shall be self-operative as forfeitures—even if such a provision could have any legal effect to that end. But, more important, if the covenants to pay royalties, make reports, and open the books, are matters of contract law, no words of the parties can make them matters of patent law. Nor can covenants that in their nature are conditions subsequent be transmuted into conditions precedent by agreement of parties." Baker, J. at page 996, of 203 F. The agreement considered in Pentlarge v. Beeston, 1 F. 862 (C. C. E. D. N. Y.), cannot on the point in question be distinguished from the one before me; and the decision was in accord with the Chadeloid Case, supra. In American Graphophone Company v. Victor Talking Machine Company, 183 F. 580 (C. C. A. 2d), it was held in effect that a patentee having granted a license cannot maintain a bill for infringement because of the failure of the licensee to pay royalties, unless the license agreement is first forfeited. These cases are clear authority against the plaintiff.

Turning to the Supreme Court decisions, in Wilson v. Sandford, 10 How. 99, 13 L. Ed. 344, the bill alleged that the defendants were infringing because they had not paid the consideration called for by the license agreement. It was held that no case was stated for injunctive relief, and that jurisdiction was not shown. This decision was followed in Luckett v. Delpark, 270 U. S. at page 503, 46 S. Ct. 397, 70 L. Ed. 703, where Taft, C. J., explaining Motion Picture Company v. Universal Film Co., 243 U. S. 502, 37 S. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959, said, "It was [there] held that the patentee might waive the contract and sue on the tort of infringement." (270 U. S. at page 507, 46 S. Ct. 397, 400, 70 L. Ed. 703). In Henry v. Dick Company, 224 U. S. 1 at page 24, 32 S. Ct. 364, 370, 56 L. Ed. 645, Ann. Cas. 1913D, 880 it was said: "If a licensee be sued, he can escape liability to the patentee for the use of his invention by showing that the use is within his license. But if his use be one prohibited by the license, the latter is of no avail as a defense." This was quoted as still law—though the case has been overruled—in De Forest Company v. United States, 273 U. S. at page 242, 47 S. Ct. 366, 71 L. Ed. 625.

■■ The proper test is, I think, that, if there is an outstanding license on the face of which the defendants' conduct is authorized, in other words, if it is within the scope of the license, the matter is one of contract, and infringement proceedings against the licensee cannot succeed. The effect of such an agreement is to supersede the injunction pro tanto as long as the agreement continues in force. It cannot be open to the plaintiff to hold onto the injunction, and at the same time

agree that it may be violated, nor to use the court's writ as a means of punishment for breach of contract. Nor can the plaintiff rely on the same act as being both a tort and a breach of contract. This is so, not because of the artificialities of pleading—as to which see a strikingly able and complete note to Cockerell v. Henderson, 50 L. R. A. (N. S.) 3— but for a much deeper reason, viz., that the law will not permit a party to maintain inconsistent positions on matters of fact, asserting one thing to-day and another thing tomorrow. Cases collected 4 L. R. A. 148, note. There are many common instances of this rule. Familiar ones are that a party who has waived a tort and sued in assumpsit for the damages cannot thereafter sue in tort for the same injury, nor vice versa; and that, if a contract be fraudulently procured, the injured party cannot have both an action upon the contract and an action in tort for the fraud. Cases on alternative remedies collected 4 L. R. A. 145, note.

The present plaintiff may have been entitled to elect whether to hold the contract or to forfeit it, as was said in Luckett v. Delpark, supra; but he cannot have it both ways. This is especially true where, as here, the defendants contend that the plaintiff broke the agreement and thereby justified their own refusal to carry out the terms of the license. Such a case presents a typical question of contract law. In White v. Rankin, 144 U. S. 628, 12 S. Ct. 768, 772, 36 L. Ed. 569, it is pointed out that in Hartell v. Tilghman, supra, the allegations of the plaintiff's bill "amounted substantially to saying that what the defendants had done they claimed to have done rightfully, under an agreement with the plaintiff."

Applying the test stated, all the acts charged against the defendants in the petition for attachment are clearly matters of contract within the scope of the license, with the possible exception of selling outside the licensed territory. As to this, on the face of the license it was never authorized; and the license is therefore no defense to the violation of the injunction which it involved, unless it is made so by the defendant's agreement not to sell except as therein authorized. The plaintiff chose to support the prohibition of the injunction by a contract to the same effect. Sales in unlicensed territory were both violations of the injunction and breaches of the license agreement. I do not think that the tort is merged in a negative covenant of this character. If B has no right to cross A's land, but does so, he is not the less a trespasser because of the fact that he promised A on good consideration to refrain from trespassing.

The plaintiff does not agree that the defendants other than the United Products Corporation are protected by the license to it; and the defendants contend that the United Products Corporation ceased doing business in October, 1928, and has committed no acts of infringement or violation of the injunction. The facts on these aspects of the matter must be found by the master, and also the facts as to extraterritorial sales in violation of the license.

There are no specific allegations with reference to the alleged violations of the trademark nor to unfair competition, nor has any special argument been made on those points. I assume that they are subsidiary phases of the infringement question and stand or fall with it. If either party desires the facts on these questions to be stated by the master, the point may be brought to my attention.

As to whether the defendants can be compelled to testify: Upon a careful examination of the cases on this point I am clear that the present proceeding as amended is one for civil contempt, and that the defendants can be compelled to testify.

Let there be an order of reference to a master in the usual form to state the facts in accordance with this memorandum.