## ATHERTON MACH. CO. v. ATWOOD-MORRISON CO.

(Circuit Court of Appeals, Third Circuit.   June 14, 1900.)

### No. 13.

**1. JURISDICTION OF CIRCUIT COURTS—SUIT ARISING UNDER PATENT LAWS.**

Where a contract, the validity of which is involved in a suit for infringement of a patent, is not one between the parties to the suit, it is collateral thereto, and cannot characterize the suit as on the contract, and not one arising under the patent laws, and therefore not within the special jurisdiction of the circuit courts of the United States.

**2. SAME.**

A suit in which the relief sought is an injunction, and the recovery of damages for the infringement of a patent, is one arising under the patent laws of the United States, and for that reason within the jurisdiction of a circuit court, although it incidentally involves a determination of the question of the ownership of the patent, which is claimed by both complainant and defendant under separate assignments from the patentee; such question itself being one to be determined under the patent laws.

**3. SAME—PLEADING—ALLEGATIONS OF BILL.**

Where a bill sets forth a case within the jurisdiction of the court, the jurisdiction cannot be ousted by the anticipation and denial in the bill of possible defenses which may not be made.

4. PATENTS—SUIT FOR INFRINGEMENT—ALLEGATIONS OF TITLE.
    A bill in a suit for infringement of a patent, which sets out complainant's
    title as derived through an assignment by the patentee and a second assign-
    ment by his assignee, both made while the application was pending in the
    patent office, and the latter of which, only, is alleged to have been recorded,
    sufficiently states title in the complainant to give it a standing in court.

5. EQUITY—PLEADING—PROFERT.
    If profert is made in a bill of any document of which it is not necessary,
    it will be treated as surplusage, and does not entitle the defendant to oyer.

6. PATENTS—SUIT FOR INFRINGEMENT—PLEADING.
    A bill in a suit for infringement of a patent is not multifarious because
    it sets out, by way of anticipation, a claim of defendant to ownership of
    the patent through an assignment alleged to be void, and prays that such
    assignment be held of no effect as against the rights of the complainant,
    and the record thereof canceled.

Appeal from the Circuit Court of the United States for the District
of New Jersey.

Edward Q. Keasbey, for appellant.

Frederick P. Fish, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. This is an appeal from the decree of the
court below sustaining a demurrer to the bill. 99 Fed. 113. The bill
was for an injunction, and accounting for the infringement of a patent.
The facts, as stated by the bill, are briefly as follows: The title of the
complainant is derived from the inventor, Jean Schweiter, of Bergen,
Switzerland. It is alleged that the inventor made application in due
form for letters patent of the United States; on July 17, 1896, and the
application was numbered with the serial number 599,484, and after-
wards, in August, 1896, the inventor, being the owner of the in-
vention, by a valid agreement in writing, for a valuable consideration,
assigned the invention and the letters patent issued thereon to Henry
Schrader, requesting the commissioner to issue the letters to him;
that Schrader, being the owner of the invention, by assignment in writ-
ing referring to the application by its serial numbers, and reciting the
assignment from the inventor to him, assigned the invention to the
Schrader Improved Quilling-Machine Company, requesting the com-
missioner to issue the letters patent to them, and this assignment was
recorded in the patent office June 20, 1897. After this, the bill says,
the letters were duly issued to Jean Schweiter, January 4, 1898, and
thereupon, by reason of the grant to Schweiter and by virtue of the as-
signment, all the rights conferred by the letters patent were vested in
the quilling-machine company, and they acquired the exclusive right
to make, use, and vend the patented machine. After this, on August
18, 1898, the quilling-machine company, by assignment in writing duly
recorded in the patent office the same day, assigned the invention and
letters patent to the complainant, which thus acquired the exclusive
right to make, use, and vend the machine covered by the patent. The
machine constructed by the quilling-machine company had already been
marked, "Patent applied for," and the complainant since the assign-
ment has been making the machines, marking them "Patented," and
giving due notice to the public; and the bill avers that the complain-

ant, having a legal as well as an equitable title to the invention and letters patent, is now engaged in the business of making and selling the machines embodying the invention, and is well able to supply the market; and the complaint is that the defendant, having no title, is guilty of infringement, and is making and selling machines containing the invention, and is issuing circulars insinuating that the complainant has not a valid title, and threatens to continue the infringement. The bill then goes on to say, by way of replication to an anticipated defense, that the defendant pretends that the inventor on October 8, 1898, assigned the invention and letters patent to the defendant; and the bill charges that, if such an assignment was made, it was invalid as against the complainant, and was obtained after the inventor had parted with all interest in the invention and application for a patent, and that when the letters patent issued thereon the title vested in the quilling-machine company, as assignee of the inventor, and also that the defendant had taken the assignment with actual as well as constructive notice of all the rights of the complainant and of the facts above set forth; and the bill avers that the complainant has both the legal and equitable title to the letters patent and invention, and that any claim or pretended right the defendant may have was subject to the rights of the complainant, and that the complainant has an exclusive right, which the defendant persists in infringing. The bill prays for an injunction and an accounting, and that the pretended assignment be declared to be of no effect, and the record thereof canceled. The defendant demurred, and the circuit court sustained the demurrer and dismissed the bill. The ground on which the demurrer was sustained was that the suit was not a suit at law or in equity arising under the patent or copyright laws of the United States, and that therefore the court had no jurisdiction of the case. The court held that the question whether the complainant was entitled to relief did not involve the consideration of any law of the United States, and that the title to the patent rested solely in contract, in the interpretation of which the general principles of equity and common law are applicable, and that as both complainant and defendant are corporations of the state of New Jersey, and as such citizens and inhabitants of that state, it had no jurisdiction of the case.

The act of congress of 1870, as embodied in section 629 of the Revised Statutes, provides that the "circuit courts shall have original jurisdiction as follows: * * * of all suits at law or in equity, arising under the patent or copyright laws of the United States." The jurisdiction thus conferred is exclusive. All questions, therefore, which concern the infringement or validity of, and the title to, patents granted under the patent laws of the United States, must be litigated in the circuit courts of the United States. "It is perfectly well settled," however, "that where a suit is brought on a contract, of which a patent is the subject-matter, either to enforce such contract or to annul it, the case arises on the contract or out of the contract, and not under the patent laws." Thus, in the earliest case in which this distinction was made (Wilson v. Sanford, 10 How. 101, 13 L. Ed. 344), the bill set forth a patent, and an assignment by the patentee of all right and interest in said patent to complainant, and a license from com-

plainant to defendants, to use one machine upon payment of a certain sum, part in cash, and part secured by notes falling due at different times. These notes contain the following provision:

"And if said notes, or either of them, be not punctually paid upon the maturity thereof, then all and singular the rights hereby granted are to revert to the said Wilson [the complainant], who shall be reinvested in the same manner as if this license had not been made."

The first of these notes was not paid when due, and, payment having been demanded and refused, this bill was filed, insisting that the license was forfeited by the failure to pay the notes, and that the licensor (the complainant) was fully reinvested, at law and in equity, with all his original rights. The bill further alleged that defendants nevertheless were using the machine, and thus were infringing the patent. The prayer was for an injunction pendente lite, for an account of profits since the forfeiture of the license, for a perpetual injunction, for a reinvestiture of title in complainant, and for other and further relief. Defendants demurred to the whole bill, and also (saving their demurrer) answered the whole bill. They admitted all the facts alleged, and averred on their part that the contract set forth in the bill had been modified and varied by a new contract, which the complainant had broken, and that the respondent, being in the lawful use of a planing machine at the expiration of the patent, had a right to use such machine without license, and consequently that the notes were without consideration. The demurrer having been overruled, the case was heard on bill, answer, and replication. The bill was dismissed for want of jurisdiction. On appeal to the supreme court, that court, by Taney, Chief Justice, said:

"The object of the bill was to set aside a contract made by the appellant with the appellees, by which he had granted them permission to use, or vend to others to be used, one of the [patented] planing machines, in the cities of New Orleans and Lafayette, and also to obtain an injunction against the further use of the machine, upon the ground that it was an infringement of his patent right. The appellant states that he was the assignee of the monopoly in that district of country, and that the contract which he had made with the appellees had been forfeited by their refusal to comply with its conditions. The matter in controversy between the parties arises upon this contract, and it does not appear that the sum in dispute exceeds two thousand dollars."

No appeal, therefore, could be allowed, unless the case came within the description contained in the act of 1836, "of all actions, suits, controversies in cases arising under any law of the United States, granting or confirming to inventors the exclusive right to their inventions or discoveries." The court then say:

"Now, the dispute in this case does not arise under any act of congress, nor does the decision depend upon the construction of any law in relation to patents. It arises out of the contract stated in the bill, and there is no act of congress providing for or regulating contracts of this kind. The rights of the parties depend altogether upon the common-law and equity principles. The object of the bill is to have this contract set aside and declared to be forfeited, and the prayer is 'that the appellant's reinvestiture of title to the license granted to the appellees, by reason of the forfeiture of the contract, may be sanctioned by the court,' and for an injunction. But the injunction he asks for is to be the consequence of the decree of the court sanctioning the forfeiture. He alleges no ground for an injunction, unless the contract is set aside."

It will be observed that in this case there was a contract between the parties to the suit, which the complainant sought to set aside, in accordance, as he alleged, with the terms of the contract itself.

The next case is that of Brown v. Shannon, 20 How. 56, 15 L. Ed. 826. As in the case last cited, the question before the supreme court was whether it had, or not, appellate jurisdiction of the case. If it was a controversy arising under the patent laws of the United States, the jurisdiction of the court would attach, without regard to the amount in dispute; but if it were only a suit upon contract, between the parties, though the subject-matter of the contract were a patent, then it was necessary to the jurisdiction of the court that the matter in controversy should exceed $2,000. Chief Justice Taney, in delivering the opinion of the court, says:

"From the manner in which the bill is framed, there is some difficulty in determining whether the complainants are seeking the aid of this court to prohibit the infringement of a patent right assigned to them, or to enforce the specific execution of two contracts that the appellant exhibited with the bill; * * * and the first question, therefore, for this court to determine, is, upon which of these two grounds does the bill seek relief? * * * Upon looking, however, carefully into the bill, we think it must be regarded and treated as a proceeding to enforce the specific execution of the contracts referred to, and not as one to protect the complainants in the exclusive enjoyment of a patent right."

After considering at length the terms of the agreements involved, the chief justice proceeds to say:

"And the gravamen of the bill, and the ground upon which relief is sought, is summed up in the paragraph immediately preceding the prayer for relief, in the following words: 'And your orators are further advised that the misconduct of the said Brown in the premises is a fraud upon the parties to the agreement of the 19th of January, 1853, as well as upon the parties to the agreement of the 15th of June, 1853, which it is the peculiar province of a court of equity to restrain.' It is to prevent the fraudulent violation of these contracts, therefore, that the complainants seek the aid of the court, and ask for an injunction; and, it being a proceeding founded on a contract between the parties, this court has no appellate power, unless the matter in controversy is of the value of more than two thousand dollars."

The next case in the supreme court of the United States was that of Hartell v. Tilghman, 99 U. S. 547, 25 L. Ed. 357, much relied upon by the appellee in his argument. This was an appeal from the circuit court of the United States for the Eastern district of Pennsylvania, in which both parties were citizens of that state. Mr. Justice Miller, in delivering the opinion of the majority of the court, states the case as follows:

"His bill begins by a statement that he is the original inventor and patentee of a process for cutting and engraving stone, glass, metal, and other hard substances. It is the one known as the 'sand-blast process.' He then sets out what we understand to be a contract with defendants for the use by the latter of his invention. He declares that defendants paid him a considerable sum for the machines necessary in the use of the invention, and also paid him the royalty which he asked, for several months, for the use of the process, which he claims to be the thing secured to him by patent. He alleges that after this defendants refused to do certain other things which he charges to have been a part of the contract, and thereupon he forbade them further to use his patent process, and now charges them as infringers. The defendants admit the validity of plaintiff's patent. They admit the use of it, and their liability to him for its use under the contract. They set out in a plea the contract as they

understand it, and the tender of all that is due to plaintiff under it, and their readiness to perform it. What is there here arising under the patent laws of the United States? What controversy that requires for its decision a reference to those laws or a construction of them? There is no denial of the force or validity of plaintiff's patent, nor of his right to the monopoly which it gives him, except as he has parted with that right by contract."

In this case, which goes to the very verge of the doctrine invoked by the appellee here, the complainant, according to the statement of Mr. Justice Miller, sets out in his bill a contract with the defendants ror the use of complainant's invention, and then alleges that defendants refused to do certain things required by their contract, and that thereupon he forbade them further to use his patented process, and then seeks to charge them as infringers. There was, therefore, a subsisting contract, not denied by defendant, but as to the terms or requirements of which the parties complainant and defendant differed. The supreme court, according to the opinion by Mr. Justice Miller, considered the suit to be one for the rescission of the contract set out in the bill, and that it could not be a suit for infringement until after such rescission. At the conclusion of the opinion, he proceeds to say:

"Where, the contract being in parol, the parties differ about one or two of its minor terms, we do not agree that either party can of his own volition declare the contract rescinded, and proceed precisely as if nothing had been done under it. If it is to be rescinded, it can be done only by a mutual agreement, or by the decree of a court of justice. If either party disregards it, it can be specifically enforced against it, or damages can be recovered for its violation. But, until so rescinded or set aside, it is a subsisting agreement, which, whatever it is or may be shown to be, must govern the rights of these parties in the use of complainant's process, and must be the foundation of any relief given by a court of equity. Such a case is not cognizable in a court of the United States, by reason of its subject-matter; and as the parties could not sustain such a suit in the circuit court, by reason of citizenship, this bill should have been dismissed."

The next case in the supreme court was Albright v. Teas, 106 U. S. 613, 1 Sup. Ct. 550, 27 L. Ed. 295. The question before the court was whether the case was properly removable from the state to the United States courts, as one arising under the laws of the United States. The court say:

"It is clear, from an inspection of the bill and answers, that the case is founded upon the agreement in writing between the appellee and the appellants, * * * by which the former, for a consideration therein specified, transferred to the latter his interest in certain letters patent. The suit was brought to recover the consideration for this transfer, and was not based on the letters patent."

In the case of Manufacturing Co. v. Hyatt, 125 U. S. 46, 8 Sup. Ct. 756, 31 L. Ed. 683, there was a writ of error to the court of appeals of the state of New York, where the jurisdiction of the state court had been affirmed. The supreme court of the United States, in an opinion by Mr. Justice Gray, says:

"The action was upon an agreement in writing by which the plaintiff, as owner of letters patent already once reissued, granted to the defendant an exclusive license to make and sell the patented article within a certain territory during the term of the patent and of any extension or renewal thereof, and the defendant expressly acknowledged the validity of the letters patent, and stipulated that the plaintiff might, without prejudice to this agreement, obtain

further reissues, and promised to pay to the plaintiff certain royalties so long as no decision adverse to the validity of the patent should have been rendered. The defendant contended that this was a case arising under the patent laws, of which the courts of the United States have exclusive jurisdiction. Rev. St. § (629), cl. 9; Id. § 711, cl. 5. But it is clearly established by a series of decisions of this court that an action upon such an agreement as that here sued on is not a case arising under the patent laws."

In Marsh v. Nichols, 140 U. S. 344, 11 Sup. Ct. 798, 35 L. Ed. 413, the scope of the decision is, for our purpose, sufficiently set out in the syllabus, which is as follows:

"A bill in equity in a state court, with jurisdiction over the parties, brought to enforce the specific performance of a contract whereby an inventor, who, having taken out letters patent for his invention, agreed to transfer an interest therein to the plaintiff, and proceedings thereunder involving no question arising under the patent laws of the United States, and not questioning the validity of the patent, or considering its construction or the patentability of the device, relate to subjects within the jurisdiction of that court; and its decree thereon raises no federal question for consideration here."

In these cases the jurisdictional limits laid down by the supreme court are easily discerned, except, perhaps, in the case of Hartell v. Tilghman, which, as we have said, went to the verge of the jurisdictional line, and neither the supreme court nor the other federal tribunals have shown a disposition to press that case further than it necessarily goes. In the case of White v. Rankin, 144 U. S. 628, 12 Sup. Ct. 768, 36 L. Ed. 569, the supreme court, after quoting the syllabus of Hartell v. Tilghman, to the effect that "a subsisting contract is shown, governing the rights of the parties in the use of the invention," proceed to point out, by a recital of the facts in the case, that the complainant, having set up a contract between himself and the defendant in regard to the use of the patented machines, was seeking to show a breach of that contract, and a consequent forfeiture, which he asked the court to sanction; the efficient existence of the contract being the only matter in controversy. In the other decisions of the supreme court above referred to, and in which jurisdiction was declined, the lis mota was clearly a contract between complainant and defendant, which was sought to be either enforced or set aside, and could not in any sense be said to arise under the patent or copyright laws of the United States. Where a bill in equity states a contract between complainant and defendant, and which it seeks to have set aside in order to pursue the defendant as an infringer, or where the bill states a contract between complainant and defendant, which it seeks to enforce, as giving complainant title to the patent, the case cannot be said to arise under the patent laws. In either case the court is called upon to administer the law of the contract, and not the patent law of the United States, or rights claimed under them. But, where the contract set up or stated is not between the parties to the suit, it is collateral thereto, and cannot, therefore, give character to the case as being on the contract, and not one arising under the patent laws. In the case before us the action was not brought to enforce a contract or to set aside a contract between defendant and complainant. In other words, it was not a suit upon a contract between the parties to the suit, within the scope of the decisions referred to. The appellee is mistaken in its contention that questions of title to patents, such as

are raised in this case, cannot be questions arising under the patent laws of the United States, because they involve the derivation of title from a contract. The complainant in this case has stated in its bill that it is the owner of the patent in suit, and derives title through an assignment from the patentee. An averment of title in the complainant must necessarily be made, and is the necessary foundation for all rights asserted or litigated by the complainant. It is an averment without which complainant has no proper standing in court. It matters not whether the title be that of the patentee, derived directly from the grant made by the government, or that of an assignee of the patentee or the assignee of an assignee. In either case it is the statement of a prima facie qualification to institute the suit, and such title, whether direct to the patentee, or derivative from him by assignment or assignments, is the creature of the patent law, and not of the common law; and, whether admitted or attacked by the opposing party, the questions raised are raised under the patent laws, and are, therefore, within the meaning of the Revised Statutes of the United States, justiceable in the circuit courts.

In the present case the appellant, who was complainant below, properly and necessarily made good its standing in court by stating its title to the patent in suit as derived by assignment from the inventor and patentee. As seen in the summary of the statement of the bill heretofore made, the assignment from the inventor was after he had made application, and before patent issued, as was also the intermediate assignment to the quilling-machine company, which was assignor to complainant. These assignments show a prima facie title in complainant, but they are all provided for and regulated by the patent laws of the United States, and any question as to the title claimed under them is a question arising under those laws. See sections 4895–4898, Rev. St. After this necessary and preliminary statement, the complainant proceeds to the gravamen of his bill, which is the averment that the original assignor and inventor was manufacturing in violation of complainant's title to the monopoly, and praying for the usual relief,—of accounting and injunction. It might have stopped there, and waited for the defendant to raise the defense which it thought it probable it would make, to wit, that the original inventor, after the issuance of the letters patent to him, notwithstanding the previous assignments already referred to, had assigned, or attempted to assign, the letters patent to the defendant. It, however, took another course that was clearly open to it to take, and that was to state the defense of this pretended assignment by way of anticipation in the bill, in order that it might make special answer thereto, and thus avoid the disadvantageous position in which it would be placed by the forty-fifth equity rule, by which special replications are prohibited. If the bill sets forth a case within the jurisdiction of the court, the jurisdiction cannot be ousted by the anticipation and denial of possible defenses that may or may not be made. Even if the title of complainant, as set forth in the bill, were put in issue by plea or answer, the question would still be one arising under the patent laws of the United States. Such an issue would be incidental and collateral to the main purpose of the suit. In this case the patentee and original

assignor is not a party to the suit, and the suit could not, therefore, be said to be upon the contract with him. This is not a suit to enforce a contract or to avoid one, but is a claim of ownership under the laws of the United States, which is properly justiceable in the federal circuit courts.

The appellee and defendant below also contends that the demurrer in the court below should be sustained because it does not appear that the complainant has a valid title. From what has already been said, it is apparent that the bill sufficiently states a title in the complainant to give it a standing in court; but the appellee further contends that the assignments referred to should have been set out in the bill, for the inspection of the court, and that the complainant was bound to do so by reason of having made profert of the same in the stating part of its bill. We do not find that this is so. If it were so, such profert was unnecessary to be made, as none of the assignments of the patent referred to are required to be under seal. If profert is made of any document, of which it is not necessary, it will be treated as mere surplusage, and will not entitle the defendant to oyer. Walk. Pat. § 433; 1 Chit. Pl. 366. The complainant was entitled to stand upon its prima facie case as to title, and the failure to set out the assignments referred to could not, under the circumstances, be taken advantage of by demurrer.

Another ground assigned for the demurrer is that the bill is multifarious. The view we have taken and already expressed as to the jurisdiction of a circuit court over the anticipated controversy as to the pretended assignment to the defendant will dispose of this objection:

"The bill does not ask that the assignment be set aside or canceled. The assignor is not a party to the suit. The prayer is merely that the complainant may have an accounting, and, incidentally, that the assignment of the letters patent be declared to be of no effect, as against the right of the complainant to the protection of the laws of the United States for this invention, and that the record of it, improperly made under the same laws, be canceled."

All these matters are properly questions under the patent laws of the United States. We think, therefore, that the court were wrong in sustaining the demurrer, and that the decree to that effect should be reversed.