HARRINGTON et al. v. ATLANTIC & PACIFIC TELEGRAPH CO. et al.

(Circuit Court of Appeals, Second Circuit. February 14, 1911.)

No. 94.

COURTS (§ 290*)—JURISDICTION OF FEDERAL COURTS—SUIT ARISING UNDER PATENT LAWS.

A bill in a federal Circuit Court alleged that complainants, who were owners of certain patents, and pending applications for patents, assigned the same in trust to one of the defendants, to be by him assigned to defendant telegraph company in exchange for shares of its stock; that its codefendant wrongfully assigned the patents to it; that it refused to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

issue the stock, but retained the assignments and was using the inventions. The bill prayed that the assignments be declared inoperative, and for a reconveyance of the patents, and also for an injunction and accounting 'for infringement against the telegraph company. That company in its answer claimed ownership of the patents by virtue of the assignments. *Held*, that the suit could not be maintained as one for infringement, under the patent laws, until the alleged fraudulent assignments had been set aside in equity, and title to the patents, either legal or equitable, vested in complainants, and that. it being admitted that the requisite diversity of citizenship did not exist between the parties, the court was without jurisdiction to grant such relief.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 832; Dec. Dig. § 290.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by George Harrington and Thomas A. Edison against the Atlantic & Pacific Telegraph Company and Jay Gould. Decree for complainants, and both parties appeal. Reversed.

Appeal by both parties from a final decree awarding to the complainants the sum of $1, as damages for infringement. The case is reported in 143 Fed. 329.

See, also, 170 Fed. 1022.

Alton B. Parker. for complainants.

Rush Taggart, for defendants.

Before COXE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. The bill, filed May, 1876, alleges that Thomas A. Edison, a citizen of New Jersey, made certain inventions in automatic telegraphy and also in duplex and quadruplex telegraphy, and that the complainants George Harrington, a citizen of the District of Columbia, and Edison, were joint owners of the patents and of the applications for patents therefor; that December 30, 1874, the complainants, with the defendant Jay Gould, a citizen of the state of New York, agreed to co-operate in bringing about an arrangement with the defendant Telegraph Company, which was controlled by Gould, the material feature of which was that the complainants were to transfer to the Telegraph Company the aforesaid inventions in consideration of 31,800 shares of its capital stock; that assignments were made by the complainants of the inventions in automatic telegraphy and the patents and applications for patents therefor to Gould April 9, 1875, and for the duplex and quadruplex inventions January 11, 1875; that these transfers were made to Gould as trustee for the sole purpose of carrying out the proposed agreement and were to be assigned by him to the Telegraph Company only upon receiving the stock consideration aforesaid, but that he wrongfully and prematurely (assuming that the arrangement would be carried out), and without receiving the said consideration, made assignments of all that he took under both deeds to the Telegraph Company, which had full notice of the foregoing facts. It is further alleged that the proposed arrangement fell through, that the Telegraph Company refused to pay the consideration, and, though notified by the complainants that the transfers were for that reason in-

operative and that it should cease to use the inventions, continued to use them fraudulently, claiming them to be their own property and the defendant Gould, though notified to return the assignments of January 11 and April 9, 1875, to be canceled, has not done so.

The prayer of the bill is that the Telegraph Company be enjoined from using the inventions and required to account for profits and damages resulting from its infringement, and that the assignments to the defendant Gould and from the defendant Gould to the Telegraph Company be declared inoperative and of no effect, and that Gould and the Telegraph Company be required to transfer whatever title to the said patents and inventions they have to the complainants or release all claims thereto to them.

It will be observed that no relief whatever is asked against Gould except that the transfers to him be declared inoperative, and that he be required to return the same, and no claim is made for the consideration of the transfers, but only for profits and damages resulting from the infringement by the Telegraph Company. Gould is not charged with fraud or with confederacy with the Telegraph Company by virtue of his assignments to it any more than Harrington is by virtue of his assignments to Gould. Article 42 of the bill is as follows:

"42. That the said George Harrington and the said Jay Gould have always recognized and admitted said trust and the aforesaid rights of the said J. C. Reiff and his associates, who furnished nearly all the funds required for the taking out of the said patents and the testing of the said inventions as aforesaid; but the defendants the Atlantic & Pacific Telegraph Company have falsely assumed that the said Gould and Harrington conspired together to cheat and defraud the cestui qui trust of the said Harrington by an absolute transfer from said Harrington to said Gould of the property held as aforesaid in trust by the said Harrington; and that such transfer was to be made without the payment of any consideration, for the benefit of the said Edison and others, the cestui qui trust, aforesaid. And the Atlantic & Pacific Telegraph Company have falsely assumed that although they had, through their said agent, Jay Gould, and otherwise, full notice of the said trust, they can defeat it and defraud the said inventor and patentee and the other parties interested as aforesaid, by taking an assignment from said Gould."

When we come to the answers, we find that the defendant Gould denies that he uses or has ever used the inventions or that he was guilty of any fraud in connection therewith, although none was charged against him in the bill, and that the Telegraph Company raising no question as to the validity of the patents or of its use of them resolutely stands upon its right to what it asserts it purchased bona fide and for value from the defendant Gould, who purchased from the complainants.

It will thus be seen that the complainants on the face of their own assignments have neither any legal nor any equitable title to the patents and inventions said to be infringed by the Telegraph Company, and that no question of patent law is raised nor any question as to the construction of the documents admitted to have been executed. The claim of the complainants is in absolute contradiction of their own assignments, and depends upon their proving that the Telegraph Company was to enjoy what it received from them through Gould only upon delivering to the complainants or to Gould for them 31,800 shares of its capital stock. Suit may be brought in equity upon an equitable

title to a patent, but these assignments must be set aside before the complainants are shown to have an equitable title or to have any standing whatever to treat the Telegraph Company as an infringer.

It is true that the bill prays for an injunction and accounting and damages because of the infringement by the Telegraph Company, but, before that question can be reached, the preliminary and essential relief prayed for, viz., that the assignments be set aside on principles of equity must be granted.

The course of the cause has been most extraordinary. The bill was filed in May, 1876. The complainants began to take proofs in October, 1879, and stopped in November, 1880. In December, 1892, the defendant Gould died, and in December, 1895, the suit was revived against his executors. In August, 1904, the complainants put the cause on the calendar for trial. The defendants then obtained leave to take testimony within 90 days from February 28, 1905, and the cause was heard May 15, 1905, 29 years after the bill was filed.

The defendants first raised the objection to the jurisdiction in March, 1905, by asking leave to file a plea to the effect that the complainant Harrington was a resident and citizen of the District of Columbia, which was denied, and after the interlocutory decree on the merits in December, 1906, they applied for leave to file an amended and supplemental answer raising the same question, which was also denied. Still the jurisdiction of the Circuit Court of the United States is statutory and limited, and it behooves a plaintiff who proceeds there or whose cause is removed there to see that the jurisdiction is complete, else everything thereafter done may be nugatory. Section 5 of the act of March 3, 1875, makes it the duty of the court, if it appears at any time that the controversy is not properly within its jurisdiction, to proceed no further therein, but to dismiss the suit or remand it with such order as to costs as shall be just. Mr. Justice Brown said on this point in Excelsior Co. v. Pacific Bridge Co., 185 U. S. 282, at page 287, 22 Sup. Ct. 681, at page 683 (46 L. Ed. 910):

"Now, as the bill in this case differs from an ordinary bill for infringement only in the fact that the suit is by a licensee against two defendants, one of whom is the licensor and owner of the patent, and the license is set forth only for the purpose of showing title, there would be no difficulty whatever in sustaining it, were it not for the question whether we are not also bound to consider the averments of the answer. We think this difficulty is practically settled by a reference to section 5 of the jurisdictional statute of 1875 (18 Stat. 470, 472 [U. S. Comp. St. 1901, p. 511]), which provides 'that if, in any suit commenced in a Circuit Court, * * * it shall appear to the satisfaction of the said Circuit Court, at any time after such suit has been brought, * * * that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court, * * * the said Circuit Court shall proceed no further therein, but shall dismiss the suit,' etc. While it seems reasonable to say that a jurisdiction once acquired by the filing of a proper bill ought not to be taken away by any subsequent pleading, the statute is peremptory in this particular, and requires the court to dismiss the case whenever at any time it shall appear that its jurisdiction has been improperly invoked. We are by no, means without authority upon this question. In Robinson v. Anderson, 121 U. S. 522 [7 Sup. Ct. 1011, 30 L. Ed. 1021], it was held that when it appeared, after all the pleadings were filed, that the averments in the declaration which alone gave the court jurisdiction, were immaterial and made for the purpose of creating a case cognizable by the court, it was the duty of the Circuit Court to dis-

miss the bill for want of jurisdiction. Said the Chief Justice: 'Even if the complaint, standing by itself, made out a case of jurisdiction, which we do not decide, it was taken away as soon as the answers were in, because, if there was jurisdiction at all, it was by reason of the averments in the complaint as to what the defenses against the title of the plaintiffs would be, and these were of no avail as soon as the answers were filed, and it was made to appear that no such defenses were relied on.' In Williams v. Nottawa, 104 U. S. 209 [26 L. Ed. 719], this court went so far as to dismiss a case in which judgment had been rendered for the plaintiff in the Circuit Court, because it appeared from the testimony of the plaintiff that certain bonds were put in his hands for collection in which he had no real interest. It was held that it was the duty of the Circuit Court on its own motion, as soon as the evidence was in and the collusive character of the case shown, to stop all further proceedings and dismiss the suit, the Chief Justice further remarking that this proviso of the act of 1875 was a salutary one, and that it was the duty of the Circuit Courts to exercise their power under it in proper cases. See, also, Wetmore v. Rymer, 169 U. S. 115 [18 Sup. Ct. 293, 42 L. Ed. 682]; Morris v. Gilmer, 129 U. S. 315 [9 Sup. Ct. 289, 32 L. Ed. 690]; Lake County Commissioners v. Dudley, 173 U. S. 243 [19 Sup. Ct. 398, 43 L. Ed. 684]."

This court upon appeal remanded a case, though the objection as to citizenship had not been taken by either party. Newcomb v. Burbank (C. C. A.) 181 Fed. 334.

The Circuit Court having no jurisdiction of the parties because of citizenship (Hooe v. Jamieson, 166 U. S. 395, 17 Sup. Ct. 596, 41 L. Ed. 1049), the question in the case is whether the cause is one arising under the patent laws of which the court has jurisdiction without reference to citizenship of the parties under section 629, subd. 9, and section 711, subd. 5, of the U. S. Rev. Stat. (U. S. Comp. St. 1901, pp. 504, 578). We find it very difficult to say that the bill is one for infringement under the patent laws in view of Wilson v. Sandford, 10 How. 99, 13 L. Ed. 344, and Hartell v. Tilghman, 99 U. S. 547, 25 L. Ed. 357. In the former case the complainants prayed that a license be set aside and that the defendant be enjoined from infringing, and in the latter the complainant prayed for an injunction and account, stating that he had canceled a license theretofore granted to the defendant. In both cases the court held that there was no jurisdiction, and this apparently on the ground that the licenses must be first set aside on equitable principles, which because the amount involved in the first case was less than $2,000 and of the lack of the proper diversity of citizenship in the second the Circuit Court could not do.

In this case the complainants granted not merely a license under patents, but the patents and inventions themselves and no injunction or decree for an accounting could go against the defendant Telegraph Company until the assignments which on their face fully authorize it to use the inventions are set aside on equitable principles. These cases also show that the mere fact that the bill alleges infringement and asks for an injunction and accounting is not enough to establish the jurisdiction of the Circuit Court.

The judge of the Circuit Court, in coming to an opposite conclusion (143 Fed. 329, 336), said:

"Having stated the essential facts and my conclusions thereon, I come again to the principal objection insisted on by counsel for the defendants. As already stated, the question of jurisdiction depends upon whether this suit

arises under the patent laws, or whether the issues merely involve the violation of contractual obligations. In the view I take of this controversy, the adjudications cited by defendants to sustain this point are of doubtful application. The cases to which attention is directed were chiefly concerned with contract rights. See Wilson v. Sandford, 10 How. 99 [13 L. Ed. 344]; Hartell v. Tilghman, 99 U. S. 547 [25 L. Ed. 357]; Albright v. Teas, 106 U. S. 613 [1 Sup. Ct. 550, 27 L. Ed. 295]. And in White v. Rankin, 144 U. S. 629 [12 Sup. Ct. 768, 36 L. Ed. 569], the distinction between such cases and those wherein the infringement is of the essence of the bill is clearly pointed out. That the defendant corporation operated the automatic system and the properties in question under a subsisting contract is not claimed by complainants. The gravamen of the bill is based, apparently, upon the wrongful and fraudulent appropriation by the defendants of their patents. True, the prayer for relief, among other things, embodies a request that the defendants be decreed to reconvey to complainants their title; but this request for relief is collateral to the primary relief demanded. Atherton Machine Co. v. Atwood-Morrison Co.. supra [102 Fed. 949, 43 C. C. A. 72]; Littlefield v. Perry, supra [21 Wall. 205];[1] Excelsior Wooden Pipe Co. v. Pacific Bridge Co., supra [185 U. S. 282, 22 Sup. Ct. 681, 46 L. Ed. 910]. If in this case the bill stated a subsisting contract, which in equity could be set aside because of fraud or other sufficient causes, a different question would be presented."

We do not think the authorities sustain the conclusion. In Littlefield v. Perry, 21 Wall. 205, 22 L. Ed. 577, the complainant was assignee of an exclusive right under the patent for New York and Connecticut, which the defendant, the patentee and assignor, was infringing. The rights of the parties were regulated by written agreements about which there was no dispute. The question was whether under them the complainant had a right to sue, and this question the Supreme Court held could be determined as incidental to the title in a patent cause. There was no need to set aside any instrument.

In Excelsior Co. v. Bridge Co., 185 U. S. 282, 22 Sup. Ct. 681, 46 L. Ed. 910, the complainant, which had an exclusive license under the patent for the Pacific states, brought suit for infringement against the patentee and one to whom he subsequently granted a license for the same territory. The only defense was that the complainant had forfeited its license. The question being only as to the existence of the license, the court held it to be within the jurisdiction of the Circuit Court in a patent cause as part of the complainant's title, distinguishing between a suit by a patentee and one by a licensee on the ground that the latter would have no adequate remedy by suit in the state courts.

In Atherton Machine Co. v. Atwood-Morrison Co., 102 Fed. 949, 43 C. C. A. 72, the complainant, as assignee of letters patent, sued the defendant for infringement, who claimed under a later assignment. Held that the assignor not being a party, the suit was not upon contract, but involved merely the plaintiff's title. In this case the question was one of construction of undisputed documents under the patent law.

It seems to be conceded by the complainants that, if the title to the patents depended upon a contract or contracts between them and the defendants, the Circuit Court would not have jurisdiction. But we think that exactly the same reasons apply when the title depends upon grants alleged to be fraudulently obtained or retained.

We feel compelled to the conclusion that the Circuit Court had no

[1] 22 L. Ed. 577.

jurisdiction of this cause and the decree must be reversed, but, in view of the circumstances of the case, the court below is directed to dismiss the bill without costs of either court.