Martin S. PAPAZIAN, Plaintiff,

v.

The AMERICAN STEEL AND WIRE COMPANY OF NEW JERSEY et al., Defendants,

United States Steel Corporation, Substituted Defendant.

Civ. A. 28877.

United States District Court
N. D. Ohio E. D.

Feb. 13, 1957.

Bruce B. Krost, of Woodling & Krost, Cleveland, Ohio, for plaintiff.

Frank Harrison, of Squire, Sanders & Dempsey, and A. J. Hudson, of Hudson, Boughton, Williams, David & Hoffmann, Cleveland, Ohio, for defendant.

McNAMEE, District Judge.

The issues here presented arise on defendant's motion for summary judgment. Plaintiff is a resident of Massachusetts and a former employee of the American Steel & Wire Company. The original defendants, American Steel & Wire Company and the United States Steel Company, both of New Jersey, were merged in late 1951, and subsequent to the commencement of this action the Steel Company was merged into the United States Steel Corporation, a separate New Jersey corporation. The alleged jurisdictional grounds are diversity of citizenship and that this action arises under the patent laws of the United States. The action is one at law in which plaintiff seeks the recovery of damages only and has demanded a jury trial.

Simply stated, plaintiff's claim is that while employed by the American Steel & Wire Company at its plant in Worcester,

Massachusetts, he invented a "method of recessing the sink head of ingots and the like", described in United States Letters Patent No. 2,485,065, and that he was induced by false and fraudulent representations of the plant superintendent to assign the application for the patent and the invention to the Wire Company and has been damaged thereby in the amount for which he asks judgment.

The alleged false representations are stated to be promises and assurances of the superintendent that in consideration of plaintiff's assignment of the patent to the Wire Company he would receive permanent employment, recognition by way of promotions, and a valuable reward for his invention. Plaintiff avers that said representations were known to be false and were made without any intent of the Wire Company to honor or fulfill them; that said promises were relied upon by the plaintiff, and that plaintiff has not received any of the considerations promised but was discharged from his employment without cause.

The Complaint, which is framed pursuant to the provisions of Rule 8(e) of the Federal Rules of Civil Procedure, 28 U.S.C., is a prolix statement of four separate causes of action, each based upon a different theory of liability but all of which rest upon substantially identical factual allegations. In his first cause of action plaintiff alleges that by their fraudulent and wrongful conduct defendants have been unjustly enriched and are constructive trustees of said patent for plaintiff, who is the rightful and beneficial owner thereof. In his second cause of action plaintiff predicates his claim on the theory that the defendants wrongfully converted his property rights in the patent. The third cause of action alleges that defendants by their wrongful conduct "hold a naked legal title in and to said invention and patent for and on behalf of plaintiff, as the equitable owner", and that defendants are and have been infringing plaintiff's patent. In the fourth cause of action plaintiff seeks recovery on an alleged breach of an oral contract. Plaintiff does not ask for a rescission of his assignments of the patent; nor does he seek any equitable relief whatever. As noted above, his claim is for money only, and appended to each of the causes of action is a prayer for damages in the sum of $850,000.

The most vigorously contested issue is whether on the record made upon this motion for summary judgment defendants are entitled to judgment as a matter of law on the claim for patent infringement set forth in the third cause of action. There is a dispute as to whether the superintendent of defendant's plant at Worcester made the statements and representations attributed to him, but defendant contends that even if it be assumed that such representations were made, it is nevertheless entitled to summary judgment.

The record discloses the following material facts:

Plaintiff entered the employment of the American Steel & Wire Company at its plant in Worcester, Massachusetts in 1933. In 1936 he applied for a patent on a stencil attachment for a spray gun to use in marking steel billets. In accordance with the company's patent rules then in effect, he gave the Wire Company and other subsidiaries of the United States Steel Corporation a royalty-free license to use this device. It does not appear, however, that much, if any, use was made of this invention by the company. On or about June 15, 1942, while employed as a "stock chaser" or surveyor of equipment, plaintiff conceived a method of recessing the sink heads of ingots, a process by which cleats are used to form indentations in the opposite sides of the sink heads of ingots and thereby provide a firmer grip for the tongs of the crane which removes the ingots from the molds and transfers them to a soaking pit.

Plaintiff disclosed his invention to his immediate superior, who was impressed with its potentialities and ordered tests or a demonstration to be made in the company's plant. In this connection plaintiff testified on deposition: "When I presented the cleats to Mr. Slenker I

found a friend immediately. He agreed with me to the $n$th degree the minute I got through explaining the process. The only doubt in his mind was whether I was a dreamer or not. That had to be shown. That's why the demonstration. Immediately after the demonstration I knew I was, shall we say, safe. I had a job definitely." On June 16, 1942 plaintiff made a detailed drawing of the invention upon a paper which bore the inscription: "This drawing and all information thereon is the property of The American Steel & Wire Company," etc. From June, 1942 to May, 1943 plaintiff's principal work was in watching the operations of the process and making tests, and in October, 1942 he made written reports to Slenker, who was the mill superintendent, of the results of the tests. During this period the method of recessing sink heads was adopted as standard practice by the company, but there was no discussion between plaintiff and any of his superior officers relative to the payment of compensation for the use of the invention. On May 11, 1943 Slenker handed plaintiff a form of application for patent and a form of assignment. Plaintiff asked Slenker to make an appointment for him with Mr. Gleason, who was then General Superintendent of the company's plant at Worcester. According to plaintiff, Slenker arranged the conference. Plaintiff stated that he complained to Gleason about the fact that he had not received the kind of job he expected when he invented the spray gun in 1936; that he said to Gleason, "This cleat patent is a valuable piece of merchandise and my property," and that he felt this would be a good time to break and capitalize on his idea. According to plaintiff, Gleason expressed appreciation of plaintiff's confidence in him, but suggested that plaintiff's impression of the value of the patent might be erroneous and, by way of illustration, Gleason said that he had something like thirty patents and had not become wealthy from any of them. Plaintiff testified that Gleason said that as against cooperating with the company and signing the instru-

ments, plaintiff ought to consider security for himself and his family—"And he went on to say that the company would reward me commensurate with the value of the patent if I was right in the value that I set on it. And that I would never have to worry about a job the rest of my life. He couldn't say in what category I might be; but he said 'your past performance is very, very pleasing,' and with the thought of security and a job for life, plus the possibilities of an additional cash reward—which I certainly could have put to good use—I left there rather happy about the whole deal, because I had considerable confidence in Mr. Gleason." After leaving Gleason's office, plaintiff said he went to the office of a Mr. Mason, where he executed an application for the patent and an assignment of the application and the invention to the company. Plaintiff stated that the conference of May 11, 1943 was the only occasion on which he ever talked to Gleason and it does not appear that at any time before or after May, 1943 plaintiff had any conversation with any officer or supervisory employee of the company relative to considerations he was to receive for executing the assignments. Gleason denies that he had any conversation with plaintiff on May 11, 1943 or at any other time about the assignment of the patent. On November 26, 1946 plaintiff executed a continuation application and another assignment of the invention to the company. Although at this time nothing was said in relation thereto, plaintiff testified that when he executed the second assignment, he did so because of the representations made by Gleason in May, 1943. Plaintiff continued in the employment of the company until February 28, 1948 when, together with a large number of employees, he was discharged for reasons of economy. At the time he left the employment of the company the patent had not issued, and it does not appear that plaintiff made any protest about being discharged; nor did he make any reference to his alleged conversation with Gleason in May, 1943. Under date of June 13, 1949, at the company's re-

quest plaintiff executed an affidavit pursuant to Rule 35 of the Patent Rules, and again on August 10, 1949 he executed a supplementary affidavit required by Rule 131. The first of these affidavits was forwarded to the company with a letter of plaintiff's counsel, stating that "This is sent to you with a complete and full reservation of any and all rights of Martin Papazian." Apparently this was the first notice that the Wire Company received that Papazian was claiming any rights in the patent. It was not until the Complaint was filed in February, 1952 that the defendant was advised that plaintiff based his claim upon the alleged conversation with Gleason in May, 1943. On October 18, 1949, more than six years after the application therefor had been filed, the patent issued to the Wire Company. Within three months thereafter the company delivered its check for $200 to plaintiff. The check bore the notation that it was issued "in accordance with United States Steel Company patent rules effective October 1, 1941." The check was not cashed but has been retained by plaintiff. From June, 1942 until the date the patent issued, the company continued to use the method of recessing ingots without any request or demand for payment of royalties by plaintiff and, except as noted above, without any claim of interest or right in the patent being made by the plaintiff. The company has continued to use the method described by the patent but has not licensed anyone else to do so.

### Third Cause of Action

 Defendant advances several grounds upon which it claims to be entitled to summary judgment on the third cause of action. The claim that plaintiff was employed to devote his efforts to the solution of the particular problem corrected by the invention cannot be sustained because of the dispute as to the nature of plaintiff's duties at and before the time the invention was conceived and perfected. Nor does it appear that at the time plaintiff executed the first assignment in May, 1943 he had knowledge of the company's patent rules which became effective October 1, 1941. Therefore the defendant's claim that plaintiff was obligated by those rules to assign the patent to the company also must be denied.

However, the defendant's claim that plaintiff does not have the requisite title to or interest in the patent to maintain a suit at law for infringement, merits serious consideration, as does its contention that irrespective of the assignments defendant was entitled to shop rights or a royalty-free non-exclusive license to use the invention. These contentions will be considered in the order stated.

 Infringement, as that term is used in the patent laws, is a violation of the rights of one who, under a valid patent or an assignment thereof or license thereunder, has, for a limited time, a monopoly to make, use or sell an invention. As the Supreme Court said in Carbice Corporation of America v. American Patents Development Corporation, 283 U.S. 27, 33, 51 S.Ct. 334, 336, 75 L.Ed. 819, "Infringement, whether direct or contributory, is essentially a tort, and implies invasion of some right of the patentee."

Section 67 of Title 35 U.S.C., which was in effect at the time this action was commenced, provides that:

"Damages for the infringement of any patent may be recovered by action on the case, in the name of the party interested, either as patentee, assignee, or grantee."

Section 281 of Title 35 U.S.C., which became effective July 19, 1952, provides:

"A patentee shall have remedy by civil action for infringement of his patent."

Thus it is clear that under the statutes an action for infringement of a patent shall be brought by the patentee or by one whose interest therein or title thereto derives from the patentee. This does not mean that an action for infringement can be maintained only by one who holds

legal title to a patent. An owner of the equitable title may seek redress against an infringer in a court of equity. If he has been fraudulently induced to part with his title, he may sue in equity for rescission of the transfer and if successful may obtain full redress for infringement by way of injunction, accounting, declaration of trust, or other forms of equitable relief. Where, upon the face of the pleadings, or the exhibits attached thereto, it is apparent that plaintiff's equitable interest arises under the patent laws, a District Court has jurisdiction in equity under Section 1338 of Title 28 U.S.C. to hear and determine a claim for infringement. Such is the teaching of the pioneer and oft-cited case of Littlefield v. Perry, 21 Wall. 205, 88 U.S. 205, 22 L.Ed. 577, and the cases following it. As was said in Dill Mfg. Co. v. Goff, 6 Cir., 125 F.2d 676, 679:

> "Its principal reliance is the cause of Littlefield v. Perry, [21 Wall. 205, 22 L.Ed. 577] but the suit there was brought by assignees with a recorded interest in the patent."

 While the authorities are not in full harmony, the better reasoned cases hold that where there is no diversity jurisdiction and plaintiff's equitable title to the patent must be established solely by the application of equitable principles, the case is not one arising under the patent laws, and the District Court is without jurisdiction of the claim for infringement until and unless plaintiff's claim of equitable ownership is first adjudged valid by a court having jurisdiction of that question. This is illustrated by Harrington v. Atlantic & Pacific Telegraph Co., 2 Cir., 185 F. 493, 495. In that case there was no diversity of citizenship, and the plaintiffs, Thomas A. Edison and George Harrington, brought an action to rescind the assignments by them of certain telegraphy patents on the ground of fraud. In reversing the action of the District Court, which held for the plaintiffs, the Second Circuit Court of Appeals said, *inter alia*:

> "Suit may be brought in equity upon an equitable title to a patent, but these assignments must be set aside before the complainants are shown to have an equitable title or to have any standing whatever to treat the Telegraph Company as an infringer."

Again, at page 498 of the opinion, the court said:

> "It seems to be conceded by the complainants that, if the title to the patents depended upon a contract or contracts between them and the defendants, the Circuit Court would not have jurisdiction. But we think that exactly the same reasons apply when the title depends upon grants alleged to be fraudulently obtained or retained."

The same principle was applied in a different factual context in Dill Mfg. Co. v. Goff, 6 Cir., 125 F.2d 676. In that case also the parties were both citizens of the same state. There the plaintiff based its right to sue for infringement of a patent and for injunction on the claim that plaintiff was the equitable owner of the patent by reason of a covenant on the part of the inventor or an obligation arising from the inventor's employment to assign the patent to the plaintiff. The sole question in the case was one of jurisdiction. In analyzing the nature of the plaintiff's case, Judge Simons said:

> "It has chosen to bring its suit as one for patent infringement, with the usual prayers for injunction, damages, and profits. It finds itself, therefore, obliged, by §§ 67 and 70 of the United States Code Annotated, Title 35, to allege title to the patent. Being neither the patentee, assignee, nor grantee, and having no record title of any kind or description, it asserts equitable ownership derived from an executory oral contract of employment with the inventor. But the execution of the agreement, and the obligation of the inventor to assign

the patent alleged to be contained therein, are denied. It is clear, therefore, that until there has been an adjudication of ownership in the plaintiff there can be no recovery of damages or profits because of infringement, and no right to injunctional process. The suit, in its primary aspect, may not, therefore, be viewed otherwise than as a proceeding in equity to compel specific performance of a contract. Succeeding, it may entitle the appellant to pursue other remedies. Failing, the controversy is at an end."

Again, in the concluding paragraph of the opinion, Judge Simons said:

"It is a suit wherein title first must be adjudicated, with adjudication dependent entirely upon the principles and rules of equity and involving in no degree the act of Congress conferring or protecting patent rights."

See also Lion Mfg. Corp. v. Chicago Flexible Shaft Co., 7 Cir., 106 F.2d 930, 932, and Vacuum Engineering Co. v. Dunn, 2 Cir., 209 F. 219. It necessarily follows that where, as here, a District Court has jurisdiction on grounds of diversity of citizenship, it may first determine, upon equitable principles, whether a claim of equitable ownership is made out and, if so, the court may then proceed in the same action to adjudicate the claim for infringement. Plaintiff cites and relies upon many cases in equity where District Courts entertained actions for infringement based upon an equitable interest in a patent or copyright. Upon examination of these cases, however, it appears that either the equitable interest was found to arise under the patent laws, where jurisdiction attached under Section 1338 of Title 28 U.S.C., or that jurisdiction to determine the preliminary question of equitable title rested upon grounds of diversity of citizenship. In all of the latter class of cases there is implicit or explicit recognition of the principle that the establishment of plaintiff's equitable title is an essential prerequisite to the determination of his claim of infringement. McKnight v. Akins, 6 Cir., 1951, 192 F.2d 674; Vanadium-Alloys Steel v. McKenna, D.C., W.D.Pa.1939, 27 F.Supp. 535; Adriance, Platt & Co. v. McCormick Harvesting Mach. Co., C.C., 55 F. 288, affirmed 2 Cir., 1893, 56 F. 918; Prest-O-Lite Co. v. Avery Portable Co., C.C.E.D.Wis.1908, 164 F. 60; American Tel. & Tel. Co. v. Radio Audion Co., D.C., 281 F. 200, affirmed 3 Cir., 284 F. 1020; Bisel v. Ladner, 3 Cir., 1924, 1 F.2d 436; Gay v. Robbins Music Corp., Sup., 38 N.Y.S.2d 337; Southern Music Pub. Co. v. Walt Disney Prod., D.C., 73 F.Supp. 580. But the foregoing authorities are of no aid to the plaintiff. He does not sue in equity. He seeks no rescission of the assignments of the patent. His action is one at law for damages. Diligent research by both counsel and the court has failed to disclose a single case in the books in which an action at law for damages for infringement based upon an asserted equitable title has been maintained. But the absence of precedential sanction to sue at law for infringement upon an equitable title is not the only weakness of plaintiff's case as stated in the third cause of action. It is true that in this cause of action plaintiff alleges that defendant holds the legal title in trust for him as the beneficial owner of the patent, but it is plain both from the allegations of the Complaint and upon the proofs that he is asserting merely that defendant is a constructive trustee. Constructive trust is not a title. As was said in International Refugee Organization v. Maryland Dry Dock Co., 4 Cir., 179 F.2d 284, 287:

"A constructive trust is not a title to or lien upon property but a mere remedy to which equity resorts in granting relief against fraud; and it does not exist so as to affect the property held by a wrongdoer until it is declared by a court of equity as a means of affording relief. See Pomeroy's Equity Jurisprudence 4th ed. vol. 3, sec. 1044, pp. 2371–3; A.L.I. Restatement of Restitution sec. 160; 54 Am.Jur.

pp. 169–70; Rolfe v. Gregory, 4 De Gex, J. & S. 576, 579; In re Farmers State Bank of Amherst, 67 S.D. 51, 289 N.W. 75, 126 A.L.R. 619; Edwards v. Culbertson, 111 N.C. 342, 16 S.E. 233, 234, 18 L.R.A. 204. As said in the case last cited: 'The trusts of which we are speaking, are not what is known as "technical trusts," and the ground of relief in such cases is, strictly speaking, fraud, and not trust. Equity declares the trust in order that it may lay its hand upon the thing and wrest it from the possession of the wrongdoer.' "

It is not without signficance that in the A.L.I. Restatement, the subject of Constructive Trusts is treated in the Restatement of Restitution rather than in the Restatement of the Law of Trusts.

 In the third cause of action, as in the first two causes, plaintiff pleads a claim for damages for deceit. It is ordinary Hornbook law that one who has been induced by fraudulent representations to part with his property has a choice of remedies. He may disaffirm the transaction and sue in equity to set aside the transfer, or he may affirm the transfer and institute a common law action for damages for fraud. He cannot in the same action do both. If they were fraudulently induced, plaintiff's assignments of the patent are not void; they are merely voidable. By suing for damages only, plaintiff has, in effect, affirmed the assignments that support defendant's title to the patent. Whatever may be the measure of plaintiff's recovery if he establishes fraud, under the pleadings and undisputed facts he cannot recover damages for infringement. He has no title, either legal or equitable, upon which an action at law for damages for infringement will lie.

 Even if plaintiff were entitled to sue for damages for infringement, he could not prevail. It appears clearly from the record that irrespective of the assignments, defendant is entitled to shop rights, which would constitute a complete defense to the claim of infringement.

Invention is defined in United States v. Dubilier Condenser Corp., 289 U.S. 178, 53 S.Ct. 554, 557, 77 L.Ed. 1114, as "the birth of an idea and its reduction to practice; the product of original thought; a concept demonstrated to be true by practical application or embodiment in tangible form." The same authority defines shop rights as follows:

"Recognition of the nature of the action of invention also defines the limits of the so-called shop right, which, shortly stated, is that, where a servant, during his hours of employment, working with his master's materials and appliances, conceives and perfects an invention for which he obtains a patent he must accord his master a nonexclusive right to practice the invention. McClurg v. Kingsland, 1 How. 202, 11 L.Ed. 102; Solomons v. United States, 137 U.S. 342, 11 S.Ct. 88, 34 L.Ed. 667; Lane & Bodley Co. v. Locke, 150 U.S. 193, 14 S.Ct. 78, 37 L.Ed. 1049. This is an application of equitable principles. Since the servant uses his master's time, facilities, and materials to attain a concrete result, the latter is in equity entitled to use that which embodies his own property and to duplicate it as often as he may find occasion to employ similar appliances in his business."

Here the invention was perfected during plaintiff's hours of employment while he was working with his employer's materials and applicances. He used his employer's time, materials and facilities to attain a concrete result. By his conduct plaintiff clearly indicated that he recognized the company's right to the use of the invention. When the test was successful he entertained the belief that he "had a job—definitely." During the period from June 16, 1942 to May 11, 1943 plaintiff actively assisted in the development and use of the invention and during that time he made no request or demand for any payment of royalties. Nor was such request made in his alleged

conversations with Gleason, or at any time thereafter during or subsequent to his discharge in 1948. Even if plaintiff had obtained a patent in May, 1943 instead of assigning all his rights to the company, the latter would nevertheless have been entitled to shop rights. In Consolidated Vultee Aircraft Corp. v. Maurice A. Garbell, Inc., 9 Cir., 204 F.2d 946, 948, Garbell perfected an invention while employed by Consolidated. He entered into an agreement with his employer, granting the latter the right to apply for a patent upon condition that if Consolidated failed to do so within nine months, all rights to the invention would revert to Garbell, "with the exception only that [Consolidated] shall have a free shop right with respect thereto." Consolidated failed to apply for the patent within the designated time. Garbell left the employment of Consolidated and obtained a patent in his own name and then sued his former employer for infringement. The Court of Appeals held Consolidated acquired shop rights under its agreement with Garbell, but also made the following significant observation:

"The evidence showed that, if Garbell ever made, developed or perfected his alleged invention, he did so by and through the use of materials and facilities of Consolidated and time for which he was paid by Consolidated. Therefore, irrespective of the invention agreement, Consolidated had a shop right with respect to his alleged invention."

In Bowen v. B. F. Goodrich Co., 6 Cir., 36 F.2d 306, 308, an employee sued to set aside an assignment of a patent on the ground of fraud, and in its opinion the court said:

"Nothing appears to indicate that appellant was not capable of fully comprehending the meaning of the papers upon reading them. His claim is that he did not read them, and, being an employee, it is perhaps true that he was less inclined to do so than he would have been had he been dealing with some one else; but it is also true that his purpose in making the suggestion was to give the idea to the appellee to be used in its plant, and in any view the appellee had a shop right to the invention. Solomons v. United States, 137 U.S. 342, 11 S.Ct. 88, 34 L.Ed. 667; Lane & Bodley Co. v. Locke, 150 U.S. 193, 14 S.Ct. 78, 37 L.Ed. 1049; Gill v. United States, 160 U.S. 426, 16 S.Ct. 322, 40 L.Ed. 480."

See also Barton v. Nevada Consolidated Copper Co., 9 Cir., 71 F.2d 381, 384; Neon Signal Devices, Inc., v. Alpha-Claude Neon Corp., D.C., 54 F.2d 793; Gate-way, Inc., v. Hillgren, D.C., 82 F. Supp. 546.

Plaintiff cites and relies upon Heywood-Wakefield Co. v. Small, 1 Cir., 87 F.2d 716; but that case is readily distinguishable. There it was shown that the employee-inventor "refused to put his invention in as a suggestion or to turn it over to the defendant until he knew what he was going to get for it." This is radically different from the situation in the case at bar.

Plaintiff contends that he conceived the invention while at home and that this fact renders the doctrine of shop rights inapplicable. Similar claims were made and denied in Consolidated Vultee Aircraft Corp. v. Maurice A. Garbell Inc., supra, and in Wiegand v. Dover Mfg. Co., D.C., 292 F. 255. See also Gill v. United States, 160 U.S. 426, 16 S.Ct. 322.

■ I am of the opinion that, irrespective of the assignments, the American Steel & Wire Company was entitled to shop rights in the invention, and that these rights passed by merger to the other named defendants. Lane & Bodley Co. v. Locke, 150 U.S. 193, 196, 14 S.Ct. 78; Neon Signal Devices v. Alpha-Claude Neon Corp., D.C., 54 F.2d 793.

By way of additional defense to the allegations of the third cause of action, defendant alleges that the patent is invalid on the ground of prior public use. Plaintiff contends, however, that the defendant is estopped to assert this defense. In view of the determinations above made, it is unnecessary to pass upon the

issue raised by the defense of prior public use. Defendant's motion for summary judgment as to the third cause of action is granted.

### First and Second Causes of Action

 These causes of action may be considered together. Although reference is made in the first cause of action to a constructive trust, and in the second to a conversion of the patent, these wholly conclusory allegations may be disregarded. Both causes of action are based upon alleged fraudulent representations and promises of the Superintendent of defendant's plant. As noted above, the Superintendent denies making the representations. Ordinarily such a dispute would constitute sufficient reason for the denial of defendant's motion. Defendant contends, however, that even if true, the representations do not support a claim of fraud. It is true that the proof does not show any misrepresentation of a past or existing fact. The alleged promises of Gleason relate solely to the future; and the only ingredient of fraud lies in the averment that at the time the promises were made, defendant did not intend to fulfill them. See 23 Am.Jur. 885, sec. 106. In assuming the burden of proving this type of fraud, plaintiff undertakes a most difficult task. Proof of a most persuasive character is necessary to sustain such a claim. The subsequent failure to fulfill a promise is not enough. If it were, a mere breach of contract would be tantamount to fraud. However, inasmuch as the issue of defendant's intent is in dispute and the evidence relating thereto is not as yet complete, the defendant's motion will be overruled at this time as to the first two causes of action.

### The Fourth Cause of Action

 In this cause of action plaintiff alleges a breach of an oral contract based upon the same representations and promises upon which he predicates his claim of fraud. Defendant argues that the promises made are so indefinite as not to give rise to contractual liability. There is force in this argument, but it

is not sufficient to remove all doubt. The motion for summary judgment as to the fourth cause of action will therefore be overruled. An order may be prepared in accordance with the foregoing.